## GEORGE A. GOFFREDO vs. MERCEDES-BENZ TRUCK COMPANY, INC.

Norfolk. January 6, 1988. — April 6, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Negligence*, Manufacturer of motor vehicle. *Motor Vehicle*, Defect. *Warranty. Evidence*, Expert opinion. *Jury and Jurors*.

At the trial of a warranty claim against the manufacturer of a truck by a driver injured in falling from the vehicle when a door opened on impact, the judge properly directed a verdict on the issue of causation where the expert opinion of a mechanical engineer, by which the plaintiff sought to prove that the door latch mechanism was defectively designed, was expressed only in terms of possibilities and thus was insufficient as matter of law to establish that the mechanism was defective, and where this expert's opinion, moreover, was rendered speculative by the lack of essential tests and measurements. [101-104]

Where a jury returned to the courtroom a second time without having agreed on a verdict, it was within the judge's discretion to permit them to disperse for the evening and, after they reassembled the following morning, to ask their consent in compliance with G. L. c. 234, § 34, to continue their deliberations. [104]

CIVIL ACTION commenced in the Superior Court Department on March 15, 1982.

The case was tried before *Sandra L. Hamlin*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Frank J. Ciano* for the plaintiff.

*Thomas H. Hannigan, Jr.* (*Katrina Weinig* with him) for the defendant.

ABRAMS, J. We granted the plaintiff's application for direct appellate review to determine whether the trial judge erroneously entered a judgment for the defendant after the jury concluded that the defendant violated its implied warranty of merchantability but were unable to reach an agreement as to proximate cause.

The plaintiff also claims that the trial judge erred by allowing the jury to return home for the evening before asking their consent to continue deliberations in compliance with G. L. c. 234, § 34 (1986 ed.). We affirm.

We summarize the evidence most favorable to the plaintiff. On the morning of October 2, 1981, George Goffredo was driving a 1980 Mercedes-Benz rollerbed[1] truck on Eastern Avenue in Chelsea en route to Logan International Airport. Goffredo, who was twenty-four years old, was employed by Patriot Trucking, whose terminal was located on Eastern Avenue in Chelsea. On October 2, 1981, the rollerbed truck was about one year old and had traveled less than five thousand miles.

Goffredo was on his way to the airport to return an empty container to the American Airlines terminal. The route to the airport required a left turn from Eastern Avenue onto Chelsea Street and then crossing the bridge on Chelsea Street to East Boston. As Goffredo turned left, the rollerbed truck hydroplaned. Goffredo lost control of the steering wheel; the truck veered to the right, jumped the curb and hit a car parked at the intersection. The truck then went perpendicular to the direction of the traffic, crossed the street, hit the opposite curb, and came to a stop.

Goffredo's body collided with the driver's side door when the truck hit the parked car; the door opened halfway and he could hear air coming into the truck through the partially opened door. As the truck approached the second curb, Goffredo was seated, holding the steering wheel and braking. When the truck hit the second curb, Goffredo's shoulder hit the driver's side door; the door flew open and Goffredo fell out, landing on his left buttock.

Goffredo remained on the ground for a few seconds then got up and crossed the street to examine the damage to the parked car. Goffredo spoke with the police and with his employer, Roger DeFeo, who happened to be traveling to work on Chelsea Street at the time of the accident. Goffredo noted that,

---

[1] The bed of the Mercedes-Benz truck was equipped with rollers and was designed to load and unload airplane containers.

when he returned to the truck after the accident, the door would not close properly. Goffredo examined the latch mechanism of the driver's side door and he noticed that one of the screws on the latch was loose. He tightened it with his finger. He noted that the latch itself was a little loose as well.

After delivering the container to American Airlines, Goffredo returned the rollerbed to the Patriot Trucking terminal and left work to seek medical treatment for numbness in his left leg. Over the next year, Goffredo saw a number of doctors and underwent physical therapy for back problems. Doctor Henry Stoltman diagnosed Goffredo as suffering from a herniated disc of the L-4 level of the lumbar spine. Doctor Stoltman opined that Goffredo's disc injury was the result of his fall from the truck.

Goffredo filed suit against Mercedes-Benz of North America,[2] alleging negligence, gross negligence,[3] breach of express warranties and breach of an implied warranty of merchantability. Trial commenced on July 7, 1986; the case was submitted to the jury on Friday, July 11, with ten special questions concerning negligence, express warranty, implied warranty of merchantability, and damages. The jury deliberated until late afternoon, and the judge dismissed them for the weekend consistent with her representation at the start of the trial that the court would keep regular hours throughout the proceedings. The following Monday, the jury deliberated until about 2:45 P.M., at which time the jury sent the judge a note stating that they were unable to agree on a verdict. After some clarification, the jury indicated that they had reached agreement on questions one through eight, but that they had deadlocked on question nine.[4]

---

[2] Goffredo also had named Mercedes-Benz do Brazil, S.A., as a defendant. This defendant was dismissed from the case in November, 1984.

[3] Goffredo's claim of gross negligence was not submitted to the jury.

[4] Special questions eight and nine were:

"8. Did the defendant breach the implied warranty of merchantability?

"9. Was defendant's breach of the implied warranty of merchantability the proximate cause of an injury to the plaintiff?"

The judge assembled the jury to announce the verdict with respect to questions one through eight. The jury concluded that neither the defendant nor the plaintiff was negligent and that Mercedes-Benz had not violated any express warranties. The jury also determined that Mercedes-Benz had violated its implied warranty of merchantability. The jurors were deadlocked on the question of proximate causation. With the consent of counsel, the judge read the jury a charge based on language in *Commonwealth* v. *Rodriquez*, 364 Mass. 87 (1973). Later that afternoon, the jury sent another note to the judge indicating that they could not deliberate further without putting unfair and undue pressure on each other's opinions. The judge indicated to counsel that she believed that the provisions of G. L. c. 234, § 34,[5] applied and that the jurors could not be required to deliberate further without their consent. Because the jurors looked tired, the judge suggested that the jurors be sent home for the evening and brought back the following day so that they could give due consideration to the request for consent to continue deliberations. The plaintiff's counsel objected. The judge overruled the plaintiff's objection and discharged the jury for the evening. She expressed her hope that the jury could approach the case with a fresh perspective in the morning.

The next morning, the judge told the jurors that they could not be made to deliberate further without their consent. The judge sent the jury out for the sole purpose of deciding whether they wished to continue deliberations. The jury voted unanimously to discontinue deliberations, and the judge then discharged them.

The defendant moved for a directed verdict both at the end of the plaintiff's case and at the close of the evidence. As soon as the judge discharged the jury, the defendant moved pursuant

---

[5] General Laws c. 234, § 34 (1986 ed.), provides: "If a jury, after due and thorough deliberation, return to court without having agreed on a verdict, the court may state anew the evidence or any part thereof, explain to them anew the law applicable to the case and send them out for further deliberation; but if they return a second time without having agreed on a verdict, they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."

to Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974), for judgment notwithstanding the verdict on question eight and a directed verdict on question nine. The plaintiff moved for entry of judgment on the question of the implied warranty claim and for a new trial on question nine limited to questions of causation and damages. The plaintiff conceded that judgment should enter on the questions of negligence and express warranty decided by the jury. The judge granted the defendant's motion for judgment notwithstanding the verdict on question eight and directed a verdict on question nine and denied the plaintiff's motions. She entered judgment for the defendant.

1. *Motion for directed verdict.* In determining whether the judge correctly granted the defendant's motions we consider "whether the evidence, construed most favorably to the plaintiff, could not support a verdict for the plaintiff." *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). We must determine whether " 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Id.*, quoting *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). The inferences must be reasonable and must be based on probabilities rather than possibilities and may not be the result of mere speculation and conjecture. *Poirier, supra* at 212.

Through the testimony of Alton Russell Copithorne, a mechanical engineer, the plaintiff sought to prove that the door latch mechanism was defectively designed and that, as a result, the latch was loose. The loose latch caused the door to open accidentally at the time of impact. Copithorne examined the door of the Mercedes-Benz rollerbed truck in March, 1986, approximately four and one-half years after Goffredo's accident. Copithorne purchased the latch mechanism from the original door, although he could not purchase the door. Copithorne used a picture of the door and a Mercedes-Benz schematic diagram as exhibits.

Copithorne explained that the latch is secured to the door by three screws which penetrate the sheet metal of the door and thread into the latch. If the latch is loose, the latch could

move within the door when the door is moving in an outward direction, "such as it might do when Mr. Goffredo came against it, or when the truck swerved," and then could push a rod in the bottom of the door, and the door could swing open accidentally.

Copithorne agreed that only "sufficient force" against the door would cause the latch to move the requisite distance within the door to cause the door to open accidentally. Copithorne admitted that he had not conducted tests to determine the amount of force that would have to be applied to the door to cause the loose latch to engage the rod. Copithorne stated that he did not know whether "sufficient force" was placed on the door at any time during Goffredo's accident to cause the door to open.

Copithorne also conceded that he had not measured the distance the loose latch would have to move in order to cause the door to open. Copithorne stated that he thought the latch would have to move between .2 and .3 inches for the door to open accidentally, but he stated, "this is only a guess because I can't, without making a layout, studying this, I can't tell you exactly . . . ." Copithorne said that this estimated distance was the basis for his opinion that the loose latch could have caused the door to open accidentally.

This evidence was not sufficient to establish that the defective condition of the latch caused the truck door to open during Goffredo's accident on October 2, 1981.[6] See *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983); *Hayes* v. *Ariens Co.*, 391 Mass. 407, 413 (1984). See also *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978).

The plaintiff's case on causation is flawed in two respects. First, Copithorne was unable to state his opinion in terms of probabilities and not possibilities. *Corsetti* v. *Stone Co.*, 396 Mass. 1, 25 (1985). *Berardi* v. *Menicks*, 340 Mass. 396, 402 (1960). An expert opinion, stated in terms of possibilities, does

---

[6] Because Copithorne conceded that the door mechanism operated properly at the time it left the manufacturer's control, the plaintiff's case was necessarily premised on the existence of a defect on the date of the accident.

not satisfy the plaintiff's burden of proof, namely, to establish by a preponderance of the evidence the existence of a design defect which caused the plaintiff's injuries. See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32 (1979); *Carey* v. *General Motors Corp.*, 377 Mass. 736, 740 (1979); *Kennedy* v. *U-Haul Co.*, 360 Mass. 71, 73-74 (1971). Copithorne's opinion that a movement of a loose latch "could have" caused the door to open accidentally is a mere statement of possibility and is insufficient, as a matter of law, to establish that the latch mechanism was defective or that the defect caused Goffredo's injuries.

Second, because Copithorne's opinion was not sought until long after the accident, his opinion was based in part on assumptions as to force and distance which he could not measure and therefore were speculative. Copithorne said that not all force exerted against the door would cause the door to open, and that only "sufficient" force would cause the door to open. However, neither he nor anyone else on behalf of the plaintiff performed any tests to determine with any degree of precision how much force would be required to cause the door to open, and he did not know whether the force exerted against the door during Goffredo's accident could have caused the door to open. Furthermore, Copithorne's opinion as to the distance the loose latch would have to move in order to engage the rod was pure conjecture. Copithorne admitted that he had not measured the actual distance the latch would have to move to open the door by accident and that he had guessed the necessary distance.[7]

An opinion based solely on speculation is without probative value. The judge correctly granted the defendant's motion for a directed verdict because the testimony of the plaintiff and his

---

[7] Copithorne also testified that when he first examined the door in March, 1986, he noticed fatigue cracks in the sheet metal of the driver's door around two of the screws which secured the latch to the door; there were incipient cracks around the third screw. Copithorne had not examined the door in October, 1981, and he admitted that he did not know the condition of the driver's side door and latch mechanism at that time. The only evidence concerning the condition of the door in October, 1981, came from the plaintiff, who said that there were no fatigue cracks around the latch screws at the time of the accident.

coworkers[8] was not, standing alone, sufficient evidence of a design defect to establish that the defendant violated its implied warranty of merchantability. Contrary to the plaintiff's argument, this was not a case in which the jury could have found, of its own knowledge, that the defendant had improperly designed the latch mechanism. See, e.g., *Smith* v. *Ariens Co.*, 375 Mass. 620, 625 (1978); *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 782 (1975); *Turcotte* v. *DeWitt*, 332 Mass. 160, 165 (1955). Rather, the precise nature of the alleged design defect and the causal relation between the defect and the plaintiff's accident were appropriately the subject of expert testimony. Without the testimony of an expert as to the amount of force necessary to cause the door to open, the evidence was insufficient to establish that the design of the door was defective and that the defect caused the door to open on the day of Goffredo's accident.

2. *Application of G. L. c. 234, § 34.* The plaintiff contends that the trial judge erred in allowing the jurors to return home for the evening after they had returned for the second time without reaching a verdict. Because we conclude that there should have been a directed verdict, there can be no error. We merely note that there was no error of law or abuse of discretion in the judge's determination of the most appropriate method of handling the jurors. See G. L. c. 234, § 34.

*Judgment affirmed.*

---

[8] Two former Patriot Trucking drivers, Paul Roche and Daniel Carideo, said that they had experienced problems getting the driver's side door to close properly and that the door had popped halfway open on prior occasions.