# United States Court of Appeals
## For the First Circuit

No. 00-1841

ISMAR HOCHEN, AS ADMINISTRATOR OF THE ESTATE OF ISMAEL HOCHEN;
RICHARD DUFAULT; CHRISTINE DUFAULT, INDIVIDUALLY AND AS MOTHER AND
NEXT FRIEND OF RICHARD DUFAULT, JR.; LEAH DUFAULT,

Plaintiffs, Appellants,

v.

BOBST GROUP, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]
[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Janet H. Pumphrey for appellants.
John J. St. Andre, St. Andre Law Offices, Michael K. Gillis,
Gillis & Bikofsky, PC, Matthew P. McCue, and Mirick, O'Connell,
DeMallie & Lougee, LLP, on brief for Massachusetts Academy of Trial
Attorneys, amicus curiae.
Kevin G. Kenneally, with whom John A. Donovan, Jr. and Donovan
Hatem LLP, were on brief, for appellee.

**STAHL, <u>Senior Circuit Judge</u>**.  Plaintiffs-appellants Ismael Hochen ("Hochen") and Richard Dufault ("Dufault") were injured on August 2, 1994, as a result of an explosion in a printing press at their place of employment, Avery Dennison Corporation ("Avery").[1] Hochen and Dufault subsequently brought suit against defendant-appellee, the Bobst Group, Inc. ("Bobst"),[2] claiming liability for negligence, failure to warn, and breach of warranty, in connection with Bobst's activities related to the printing press in 1971 and 1972 and in 1994.  In separate rulings, the district court granted Bobst's motions for (1) partial summary judgment on all claims arising out of its activities in 1971 and 1972; (2) partial summary judgment on the breach of warranty and failure to warn claims arising out of Bobst's activities in 1994; and (3) judgment as a matter of law on the remaining negligence claims.  Appellants now ask us to review the first

---

[1]Ismael Hochen has died since the commencement of this lawsuit and Ismar Hochen, the administrator of his estate, has been substituted as plaintiff-appellant.  The remaining three plaintiffs are the wife and children of Dufault.

[2]The suit was originally filed by Ismael Hochen in Middlesex Superior Court in March 1996.  In April 1996, the complaint was amended to add the Dufault family.  In June 1996, Bobst removed the case to federal court pursuant to 28 U.S.C. §§ 1332 and 1446.

and third rulings as well as the district court's decision to exclude testimony by their expert witness.  We affirm.

## I. BACKGROUND

In 1971 and 1972, Bobst designed and constructed the press in question, Press 8 (the "press"), following Avery's custom specifications and requirements, and installed it at Avery's facilities in Framingham, Massachusetts. The press, which printed labels for a variety of products, weighed 38 tons, was approximately 85 feet in length, and was affixed to the plant's floor, ceiling, walls and various utility systems. It operated in the following way: A spool of paper -- the "web"-- after entering through an "infeed," was pulled through a number of print stations, and rewound after passing through an "outfeed." The outfeed pulled the web through and the infeed followed. In the process, the paper was inked and then moved through a gas powered dryer before reaching the outfeed. Highly flammable solvents were used to keep the printing ink liquid.

In 1994 Avery undertook a project to upgrade the press. Although Avery decided to conduct the upgrade with in-house employees, it requested that Bobst send field technicians to the plant for several days to work on the installation of two used pieces of equipment, an S-1480 Registron control system (the "S-1480") and an R-820 infeed electronic system (the "R-820 infeed"). The S-1480 was an electronic registration device that helped identify the relative position to each other of successive colors being printed on a label and adjusted the print cylinders to ensure their proper alignment. The R-820 infeed

-4-

electronic system was a part of the infeed that, along with a companion R-820 outfeed system, controlled the tension of the paper web as it passed through the press. For the press to operate correctly, the same tension of the web had to be maintained throughout the entire printing process. Tachometers on the press measured web speed and sent voltage signals that allowed different parts of the press to operate in a synchronized fashion. Bobst technicians installed one tachometer as part of a component of the S-1480 called an auto-sequencer. The parties disagree as to whether Bobst had a duty to synchronize the voltage signal of this tachometer with the voltage signals of other devices on the press -- and specifically with the voltage signal from a tachometer in the outfeed unit -- and as to whether the auto-sequencer was intended to be operational at all at the time of the installation.

The Bobst technicians worked at Avery from approximately June 26, 1994 to July 3, 1994. The parties strongly contest how Bobst's services during this period should be characterized. Appellants argue that Bobst was hired to install, start up, and debug the S-1480 and R-820 infeed because they were the "experts" on these devices. Bobst counters that its field technicians were hired only to fill in a labor shortage arising out of vacations taken by Avery's own employees and that Avery intended to complete the work with its own electricians and tradesmen. In any case, the record indicates that

Avery discharged Bobst's technicians shortly before the 4th of July weekend, at a time when the press was not operational, telling them that they would be called back if needed.

On August 2, 1994, an explosion in the press injured Hochen and Dufault. Appellants brought suit against Bobst, alleging that Bobst was liable for negligence, failure to warn, and breach of warranty in connection with its activities involving the design and installation of the press in 1971 and 1972 and involving the upgrade in 1994. With regard to the 1994 upgrade, appellants' theory was essentially that Bobst failed to correct voltage problems with the press's tachometers, leading to problems with web tension. Avery employees testified that, on the day of the explosion, the web had so much slack that it was dipping into one of the ink pans before shooting into the dryers and appellants argued that the flammable solvents in the ink caused the explosion in the dryer. However, the record evidence indicates that there were other problems with the press on the day of the explosion, including the fact that fan blades in the exhaust fan above the print unit where the explosion occurred had been installed backwards by Avery employees, preventing solvents from being exhausted out of the dryer.

On December 5, 1997, the district court granted Bobst's motion for partial summary judgment on all claims arising out of any deficiency or neglect by Bobst in the design, construction, or

installation of the press in 1971 and 1972, holding that these claims were barred by Massachusetts's six-year statute of repose, Mass. Gen. L. ch. 260 § 2B, concerning improvements to real estate. Hochen v. Bobst Group, Inc., No. 96-11214-DPW, R. Doc. 56 (D. Mass. Dec. 5, 1997). The parties thereafter consented to proceed before a magistrate judge for trial and entry of judgment pursuant to 28 U.S.C. § 636(c). On May 10, 2000, the magistrate judge further entered summary judgment in favor of Bobst on the breach of warranty and failure to warn claims related to Bobst's activities in 1994. Hochen v. Bobst Group, Inc., No. 96-11214-RBC, R. Doc. 234 (D. Mass. May 10, 2000).

The negligence claims relating to the 1994 upgrade -- the only claims to survive the two summary judgment motions -- went to trial before a jury in May 2000. On May 19, 2000, in a bench ruling, the magistrate judge excluded the testimony of appellants' expert witness, Daniel Harwood, on these claims and granted Bobst's motion for judgment as a matter of law on the issue of negligence, thereby disposing of the case. Hochen v. Bobst Group, Inc., No. 96-11214-RBC, R. Doc. 264 (D. Mass. May 19, 2000).

Here, appellants ask us to review three of the district court's rulings: (1) the order granting summary judgment to Bobst on claims held to be barred by the statute of repose; (2) the ruling excluding testimony by appellants' expert witness; and (3) the ruling

-7-

granting Bobst's motion for judgment as a matter of law on the negligence claims. Appellants do not appeal the summary judgment ruling in favor of Bobst on the breach of warranty and failure to warn claims related to Bobst's activities in 1994. We affirm the exclusion of the expert witness testimony and the grant of judgment as a matter of law on the 1994 negligence claims. We also affirm the district court's 1997 grant of summary judgment in favor of Bobst on the claims arising out of Bobst's activities in 1971 and 1972, but on grounds other than the statute of repose.

## II. CLAIMS ARISING OUT OF 1971-1972 ACTIVITIES

On appeal, Bobst contends that the statute of repose question is moot.[3] Bobst argues that, even if we were to find that the statute of repose does not bar appellants' claims arising out of the design, manufacture, and installation of the press in 1971 and 1972, the claims must fail because appellants never designated any relevant expert opinion testimony. Such designation is required under Rule 26(a)(2) of the Federal Rules of Civil Procedure. Without the qualified expert opinion testimony, Bobst argues, appellants could not submit their claims to the jury, even if we were to remand the case for retrial as to their 1971 and 1972 claims.

_____

[3]Appellants had previously filed a motion to certify the statute of repose question to the Supreme Judicial Court of Massachusetts. We note that, because we do not reach the statute of repose question, appellants' motion is moot.

After a review of the record, we agree with Bobst that appellants failed to designate any expert testimony on any purported design defects, manufacturing defects, or breaches of warranties in the original design, manufacture or construction of the printing press or its components. A fair reading of the reports filed by Harwood is that they speak only to alleged negligence, failure to warn, or breach of warranty claims stemming from Bobst's role in the upgrade of the press in 1994.[4] Despite their protestations to the contrary, neither in their briefs nor in oral argument have appellants pointed us to any sections of the filed expert reports that could be characterized as raising an issue related to the 1971-1972 design, construction, and installation of the press.

Although, under Massachusetts law, expert testimony may not be required in cases where the jury can find a design or manufacturing defect based on the testimony of the injured or of co-workers, here the nature of the defect or breach of warranty and its causal relation to the accident were complex and thus appropriately the subject of expert testimony. See Gofredo v. Mercedes-Benz Truck Co., 520 N.E.2d 1315, 1318-19 (Mass. 1988). We accordingly hold that appellants cannot succeed on their claims of

---

[4]As we have mentioned supra and delineate further in section III, the magistrate judge correctly excluded Harwood's expert testimony on the upgrade-related claims, so that ultimately appellants have presented no admissible expert testimony on any of their claims.

alleged deficiency, neglect or breach in the design, manufacture, and installation of the press in 1971 and 1972 and decline to reach the issue of the statute of repose.[5]

III. NEGLIGENCE CLAIMS ARISING OUT OF 1994 ACTIVITIES

In order to succeed on a claim of negligence at trial, appellants were required to establish that (1) Bobst owed them a duty of care, (2) Bobst breached that duty, and (3) Bobst's breach of the duty caused the injury to appellants. See Davis v. Westwood Group, 652

_____

[5]We note that we may rule on the sufficiency of appellants' expert testimony at the appeals stage and need not give appellants the opportunity to cure the deficiency in the expert reports by remanding to the district court. In Weisgram v. Marley Co., 528 U.S. 440 (2000), the Supreme Court held that an appeals court could enter judgment as a matter of law for a verdict loser on appeal, where the verdict winner's evidence became insufficient after the court of appeals determined that certain evidence should not have been admitted. The Court found "unconvincing [plaintiff's] fears that allowing courts of appeals to direct the entry of judgment for defendants will punish plaintiffs who could have shored up their cases by other means had they known their expert testimony would be found inadmissible." Id. at 455-56. The Court pointed out that the plaintiff had been "on notice every step of the way" that defendant was challenging his experts, but that plaintiff had made no attempt to cure the deficiency. Id. at 456. Although the procedural posture of this case is different -- the trial court never ruled on the sufficiency of the plaintiffs' expert testimony as to the product defect claims -- we believe that the same principle holds here. Appellants had been put on notice by Bobst as to challenges to their expert in several objections and oppositions filed by Bobst to Harwood's qualifications and testimony. We therefore see no unfairness to appellants in our current ruling. Additionally, appellants conceded at oral argument that we need not reach the statute of repose question if the expert opinion on the claims in question was determined to be inadequate.

N.E.2d 567, 569 (Mass. 1995). The dispute between the parties has centered on whether Bobst had a duty to synchronize the voltages of the various components of the press and, if so, whether Bobst's failure to do so was the cause of the explosion that injured appellants. Appellants ask us now to find first that the magistrate judge abused his discretion in excluding testimony by their expert witness, which was directed to the issues of duty and causation. Second, appellants argue that, even without the expert testimony, they had made out a prima facie case of negligence that should have been submitted to the jury.

## A. Exclusion of Expert Testimony

At trial, appellants offered testimony by Harwood to support their claims of negligence by Bobst in its activities relating to the 1994 upgrade of the press. Harwood's testimony would have addressed, first, the scope of the work assigned to Bobst by Avery, and, second, the cause of the explosion in the gas dryer. On the first issue, the magistrate judge held that Harwood's testimony as to what the Bobst technicians' work orders meant was irrelevant because the terms should be interpreted from the perspective of a field technician and not from the perspective of an engineer. As to the second issue, the magistrate judge held that Harwood's testimony with respect to the press was not reliable because "the testimony is not based on a sufficient knowledge of the machine."

-11-

Rule 702 of the Federal Rules of Evidence assigns to the trial judge the responsibility for ensuring that an expert's testimony as to scientific, technical, or other specialized knowledge "both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (holding that Daubert applies to expert testimony as to technical and other specialized knowledge in addition to scientific knowledge). "The ultimate purpose of the Daubert inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." Cipollone v. Yale Indus. Prod., Inc., 202 F.3d 376, 380 (1st Cir. 2000). We accord the trial court broad deference in its determination as to the reliability and relevance of expert testimony, reviewing the determination only for abuse of discretion. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997); Diefenbach v. Sheridan Transp., 229 F.3d 27, 29 (1st Cir. 2000). Appellants nevertheless urge us to find that the magistrate judge abused his discretion in excluding Harwood's testimony. We decline to do so. First, a review of the extensive voir dire hearings held by the magistrate judge establishes that Harwood showed little knowledge in the fields of fires and explosions. Second, although we are mindful of appellants' position that Harwood's expertise in electronic controls, and not in explosions, constituted his essential contribution to explicating this industrial

-12-

accident, the voir dire hearing transcript is replete with substantial challenges to Harwood's knowledge of the electronic controls of the specific press in question here. In this context, we cannot say that the magistrate judge abused his discretion in excluding Harwood's testimony as to causation.[6] Finally, on the question of the proper perspective from which the work orders were to be interpreted, where the record indicates that the work on the R-820 and the S-1480 was assigned by Avery employees with backgrounds as electricians or in electronics, carried out by Bobst employees with similar training and experience, and approved by the same Avery employees, testimony by an engineer as to the meaning of the terms would have been of questionable "relevan[ce] to the task at hand." Daubert, 509 U.S. at 597. Again, we cannot say that the magistrate judge's decision to exclude Harwood's testimony on this issue was an abuse of discretion. We therefore affirm the magistrate judge's ruling.

**B. Grant of Judgment as a Matter of Law**

---

[6]Appellants have argued that the magistrate judge's findings on this point were inconsistent and contradictory, in that the magistrate judge stated that he was not finding that Harwood "was unqualified to have obtained the necessary knowledge and to give opinion testimony about the machine," but rather that Harwood had not demonstrated that "he had gained the requisite degree of knowledge and familiarity with the machine so as to be able to render reliable testimony." We see no inconsistency in this statement. The magistrate judge reasonably determined that, although Harwood could have acquired the familiarity with the press necessary to make his testimony admissible, the voir dire hearing demonstrated that he had failed to do so.

-13-

The third ruling appellants contest is the grant in favor of Bobst of judgment as a matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, on the negligence claims arising out of Bobst's work on the press in 1994. Appellants argue that, even without the expert testimony, they made out a prima facie case of negligence that should have been submitted to the jury.[7] The magistrate judge found that the appellants had failed to introduce sufficient evidence as to the duty and causation elements of their negligence claim. The magistrate judge ruled that the jury could find that a proximate cause of the explosion was the web slack, leading to the ink-drenched web entering the dryer. However, the magistrate judge found (1) that appellants had failed to prove that Bobst had an obligation to correct any voltage problems the press may have had and (2) that, even if Bobst had an obligation to correct any problems, appellants offered no evidence that the un-synchronized voltage was a proximate cause of the web slack.

We review the grant of a motion for judgment as a matter of law de novo. See Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 25 (1st Cir. 1998). Applying the same standard as the district court, we examine the evidence and all fair inferences in the light most

---

[7]We note that the magistrate judge does not appear to have relied on the exclusion of the expert testimony in determining that Bobst was entitled to judgment as a matter of law. The magistrate judge's discussion of the expert testimony follows his discussion of the motion for judgment as a matter of law.

-14-

favorable to the non-movant and determine whether the non-movant has offered "more than a mere scintilla of evidence," warranting the submission of the issue to the jury. Katz v. City Metal Co., Inc., 87 F.3d 26, 28 (1st Cir. 1996) (internal quotations omitted). We "'may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.'" Id. (quoting Richmond Steel, Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992)). We will affirm the district court only if, "applying these standards, the evidence does not permit a reasonable jury to find in favor of" appellants. Brennan, 150 F.3d at 26.

On the question of duty, appellants urge us to find that the magistrate judge took too narrow a view of Bobst's role in the upgrade of the press. The magistrate judge found insufficient evidence that Bobst had any obligation to work on the tachometer in the outfeed, which, in the state in which it had been left, allegedly would have sent a voltage signal to devices in the S-1480 and/or R-820 infeed that was inconsistent with the signals generated by those devices. Appellants' argument is essentially that, whether or not Bobst had an obligation to work on other tachometers within the press, they "had a duty to install the S-1480 and R-820 infeed onto Press 8 and to check out, debug, and start-up the press" and "[i]n so doing, they needed to ensure that all the components of the press worked together electronically." Appellants point out that Bobst had been provided

-15-

with the electronic drawings that came with the used equipment and contend that Bobst should have been alerted to a potential problem concerning the compatibility of the S-1480 and R-820 electronics with the rest of the press.

We find that appellants have not produced "more than a mere scintilla of evidence" in support of their theory of duty and that they therefore cannot withstand a motion for judgment as a matter of law.[8] First, the record does not support the argument that Bobst had an obligation to synchronize the electronic controls of the press. Appellants have directed us to several segments in the depositions and trial testimony that allegedly support the position that Bobst had an obligation to ensure that the electronic systems, as a whole, were compatible. Much of the cited testimony, however, simply stands for the proposition that, in order for the press to run properly, the electronics on the various devices had to be synchronized, and not for the proposition that Bobst was the party with the obligation to ensure that these electronics were synchronized. Even where the testimony suggests that Bobst may have had an obligation to check out the

_____

[8]We reject up-front appellants' argument that, because the same magistrate judge stated in a ruling in a related proceeding that appellants had "at best a 50-50" chance of succeeding in their case against Bobst, Hochen v. Bobst Group, Inc., 198 F.R.D. 11, 18 (D. Mass. 2000), appellants must have had more than "a mere scintilla" of evidence in their favor. That comment is taken out of context in that it presupposes that appellants could have actually proven everything they alleged.

-16-

electronics on the S-1480[9] and the R-820 infeed, we find nothing that could be considered "more than a mere scintilla of evidence" to the effect that Bobst was required to synchronize the voltage signals on these systems with voltage signals coming from other devices on the press.[10]

Second, even acknowledging that the record of depositions and testimony is voluminous and the issue at hand complex, so that "more than a mere scintilla of evidence" suggesting appellants' theory of

---

[9]We note again here that the parties additionally disagree as to whether the auto-sequencer on the S-1480 was intended to be operational at all.

[10]For example, appellants urge us to read testimony by John William Guertson, Avery's research and development manager at the time of the accident, to say that "Bobst was hired to install the S-1480 electronic system and the electronic system for the R-820 infeed and that, when they left, presumably, they had checked out those electronic systems." While Guertson does testify to the effect that Bobst had checked out the electronic systems for the R-820 and the S-1480, the testimony continues as follows:

> Q. Is it your testimony that you don't know whether or not Bobst checked out the electronic system on the outfeed R-820 rewind?
> A. Right.
> * * *
> Q. But if Bobst came in to do the infeed, is it your belief that Bobst also, while they were there, would have also done the outfeed?
> A. No, I don't think so.

Hochen v. Bobst Group, Inc., No. 96-11214-RBC, Transcript, vol. II at 56 (D. Mass. May 16, 2000).

-17-

duty could conceivably be uncovered,[11] we find that any duty Bobst may have had as to the electronics of the system ended when Avery discharged the Bobst technicians on July 3 . We are not persuaded by appellants' argument that Bobst should have noticed the voltage problem and worked to correct it from the beginning of its work, so that it makes no difference that Bobst may have been terminated before the completion of the work. To the contrary -- and regardless of how the parties may have understood the terms "debug" and "start-up" in the Bobst work orders -- the record cannot be read to support any position other than that, when the Bobst technicians were discharged on July 3 , Avery recognized that the work on the press was not complete, that the press was not ready to be used, and that Avery would be responsible for making sure the press functioned as a whole.[12]

---

[11]Appellants argue that the magistrate judge failed to read certain deposition testimony and that therefore they were not "fully heard" as required before the court may grant a motion for judgment as a matter of law against a party. Fed. R. Civ. P. 50(a)(1). We have reviewed the sections to which appellants direct us in those depositions allegedly not read by the magistrate judge and find no evidence in them that amounts to "more than a mere scintilla of evidence" in favor of appellants' theory of duty.

[12]Gary W. Guidi, the Avery maintenance supervisor to the press at the time of the explosion, testified as follows:

Q. At some point did you release the Bobst workers?
A. Yeah. I mean, July 4th is -- we kind of called it a day and figured we'd come back and start reducing things to practice and finish up whatever needed to be done.
Q. So, on July 3rd, when Mr. Verhoeven [a Bobst

Because we agree with the magistrate judge that appellants have not presented "more than a mere scintilla of evidence" in support of a duty on the part of Bobst to synchronize the voltage signals coming from the various devices on the press, we need not reach the question of whether they presented sufficient evidence on the question of causation.[13] We affirm the grant of judgment as a matter of law on the negligence claims against Bobst arising out of its role in the 1994 upgrade.

IV. CONCLUSION

---

technician] left, that was with your blessing; right?
A. That's correct.
* * *
Q. And I just want to determine what the status was of the electronic work at the end of July 3rd, when Mr. Verhoeven left. Was it completed?
A. I would say, you know, the terminations were done. The equipment was at a point where it could be reduced to practice. Find out any -- you could reduce to practice, find any other issues that may crop up, and you know, see what happened from that point. It wasn't to the point where you could say this press is finished and let's run this press.

Hochen v. Bobst Group, Inc., No. 96-11214-RBC, Transcript, vol. IV at 51-52 (D. Mass. May 18, 2000).

[13]We note that, as with the design defect claims arising out of Bobst's activities in 1971 and 1972, the alleged causal relationship between Bobst's activities in 1994 and the accident is complex and thus appropriately the subject of expert testimony. Gofredo, 520 N.E.2d at 1318-19. In the absence of Harwood's excluded testimony, appellants have not presented any expert evidence on this issue.

For the reasons stated above, we <u>affirm</u> (1) the grant of summary judgment in favor of Bobst on all claims arising out of its activities in 1971 and 1972; (2) the ruling excluding testimony by appellants' expert witness; and (3) the grant of judgment as a matter of law in favor of Bobst on the remaining negligence claims.

<u>Costs to appellee.</u>