# United States Court of Appeals
## For the First Circuit

No. 05-2685

RAYMOND BEAUDETTE and LISA BEAUDETTE,

Plaintiffs, Appellants,

v.

LOUISVILLE LADDER, INC.
(formerly known as LOUISVILLE LADDER GROUP, LLC),

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Lynch and Howard,
Circuit Judges.

Daniel C. Federico, with whom Rainer & O'Connor LLP was on brief, for appellants.
Harrison L. Richardson, with whom Paul R. Johnson, and Richardson, Whitman, Large & Badger were on brief, for appellee.

September 6, 2006

**TORRUELLA**, **Circuit Judge**. Plaintiffs-appellants Raymond Beaudette ("Beaudette") and Lisa Beaudette (collectively, "the Beaudettes") filed suit against defendant-appellee Louisville Ladder, Inc. ("Louisville Ladder") in the United States District Court for the District of New Hampshire, seeking damages for injuries arising from an accident where a ladder, manufactured by Louisville Ladder, collapsed. The district court excluded the testimony of the Beaudettes' expert witness and entered summary judgment in favor of Louisville Ladder. The Beaudettes appeal. After careful consideration, we affirm.

## I.

On May 4, 2001, Beaudette, a building contractor, was working at a residential home under construction in Exeter, New Hampshire. At the time of the accident, Beaudette was standing somewhere between eight and ten feet above the ground on scaffolding that he and his employees had constructed. The scaffolding consisted of two twenty-four-foot aluminum planks, supported in the middle by the ladder in question and supported on each end by two additional extension ladders. The aluminum planks were attached to the ladder in question by a ladder jack.[1] When the middle ladder collapsed, Beaudette fell approximately seven or

---

[1] A ladder jack is a triangular metal bracket that attaches to the rungs of an extension ladder.

eight feet to the ground, breaking his right tibia and dislocating his right knee.

The Beaudettes filed suit against Louisville Ladder in the United States District Court for the District of New Hampshire, seeking damages on five counts: negligence, failure to warn, failure to give adequate instruction, breach of implied warranty, and negligent infliction of emotional distress.

The district court fixed a deadline of April 15, 2005 for the Beaudettes to designate expert witnesses. By the deadline, the Beaudettes designated Wilson Dobson ("Dobson") as an expert on the existence of manufacturing defects in the ladder. Dobson holds a Masters of Science in Materials Engineering, a Bachelors of Science in Mechanical Engineering, and has nearly thirty years of experience as a practicing and consulting engineer. Dobson filed a report on April 14, and Louisville Ladder deposed him in June. Louisville Ladder filed a combined motion to exclude Dobson's expert testimony and for summary judgment on or about August 12. The Beaudettes moved on or about August 29 to designate Dobson as an expert on the inadequacy of the warnings attached to the ladder. At this time, the trial was set to begin on October 4, but on September 26 the district court changed the trial date to November 1, 2005.

In his report, Dobson concluded that there was a manufacturing defect in the ladder and described his methodology.

He first conducted a visual examination of the ladder and noted that the fiberglass rails of the base section of the ladder had broken. Dobson then cut samples from the ladder and examined the samples under a microscope. He observed that there were "resin pockets and fiber free regions, folds in the fibers, [and] cracking following the resin rich pockets." In conjunction with his observations, Dobson considered a standard promulgated by the American National Standards Institute ("ANSI"), an independent entity made up of representatives of industry, labor, government, and academics. ANSI Standard 14.5 describes standards for manufacturing fiberglass ladders:

> The material shall be smooth, clean, uniform in color and reasonable [sic] free from conducting particles, foreign materials, pits, cracks, voids, chips, sink marks, delaminations, blisters, and scratches, in accordance with good commercial practice. The distribution of filler, additives, or glass fiber shall be free of resin-rich and resin-starved areas, and there shall be no evidence of significant reenforcement shifting, wrinkles, bunching up, or density variation within a length, all in accordance with good commercial practice.

The ANSI Standard does not define the terms "resin-rich" and "resin-starved" and provides no objective criteria to measure how a variation in the resin will affect the strength of the fiberglass material. The standard also does not define what constitutes "good commercial practice." Dobson stated that, because of the resin-rich pockets in the fiberglass ladder, the ladder did not meet the

ANSI Standard and was therefore defective. Dobson did not conduct any testing, refer to any technical literature, or consult with any other experts.

On October 6, the district court conducted a <u>Daubert</u> hearing on the motion to exclude Dobson's expert testimony. At the hearing, Dobson testified that he knew of no testing or literature that supported his opinion. The district court attempted to discern whether the language of the ANSI standard provided a sufficient basis for Dobson's opinion. Dobson stated that in order for a ladder to be safe it must be entirely free of resin-rich pockets but had no support for his opinion. Although the ANSI standard states that fiberglass ladders must be "free of resin-rich and resin-starved areas," the requirement is qualified by the phrase "in accordance with good commercial practice." Dobson stated that he had no information as to what constituted "good commercial practice" in the ladder manufacturing business. Dobson also stated that he was "not an expert in the pultrusion process," the process by which the ladder was manufactured.

The district court found that Dobson's expert testimony was inadmissible because he did not have a sufficient basis for his expert opinion. The district court also denied the Beaudettes' untimely motion to designate Dobson as an expert on the inadequacy of the warning labels attached to the ladder and granted summary judgment in favor of Louisville Ladder.

**II.**

The Beaudettes present three arguments on appeal. First, they challenge the exclusion of Dobson's expert testimony on material defects in the ladder. Second, they contest the district court's refusal to allow the late designation of Dobson as a warnings expert. Third, they argue that the district court erred in requiring expert testimony on the failure to warn claim. We examine each argument in turn.

**A. Expert Testimony on Manufacturing Defects**

Under Rule 702 of the Federal Rules of Evidence, it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); United States v. Díaz, 300 F.3d 66, 73 (1st Cir. 2002). We review a district court's decision to admit or exclude expert testimony for abuse of discretion, giving broad deference to the determination made by the district court as to the reliability and relevance of expert testimony. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997); Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002).

In Daubert, the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: "(1) whether the

theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (citing Daubert, 509 U.S. at 593-94). However, these factors do not "constitute a definitive checklist or test," and the question of admissibility "must be tied to the facts of a particular case." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (internal quotation marks omitted).

The Beaudettes make several arguments to support their contention that the district court erred in excluding Dobson's expert testimony. Each of these arguments is meritless, and we address them briefly. The Beaudettes first argue that the district court applied the wrong legal standard by requiring that expert witness testimony be based upon "generally-accepted" scientific methods. See Daubert, 509 U.S. at 589 (stating that a general acceptance requirement is incompatible with the Federal Rules of Evidence). However, the district court clearly based its decision upon a Daubert analysis, and the district court's order does not even mention the general acceptance test.

The second argument is that the district court improperly turned the Daubert hearing into a mini-trial on the issue of causation. In support of their argument, the Beaudettes cite only

one case for the proposition that "the Daubert regime should be employed only with great care and circumspection at the summary judgment stage."  Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 188 (1st Cir. 1997).  We have reviewed the record and found no error in the proceedings.

Third, the Beaudettes argue that even without the application of the ANSI standard, Dobson's expert opinion was "bolstered by the basic principles of physics, engineering, and material science."  Again, we see no error by the district court.

The Beaudettes also claim that Louisville Ladder is judicially estopped from arguing that Dobson is unqualified to testify as an expert due to his inability to define what constitutes "good commercial practice" under the ANSI Standard. The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227, n.8 (2000)).  This Court has held that a claim of judicial estoppel requires the proponent to "show that the party to be estopped succeeded previously with a position directly inconsistent with the one it currently espouses."  SEC v. Happ, 392 F.3d 12, 20 (1st Cir. 2004) (internal quotation marks and brackets omitted).  The Beaudettes, however, have not shown that Louisville Ladder has ever taken contradictory positions in this

proceeding.  Although Louisville Ladder may have participated in the creation of the relevant ANSI standard, the ANSI standard is not contradictory to their current position, and its creation was nevertheless not a prior phase of this case.

The Beaudettes have not shown any error in the district court's decision to exclude Dobson's expert testimony, and we find no abuse of discretion by the district court.

### B.  Late Disclosure of Expert Testimony

The Beaudettes next challenge the district court's refusal to accept the late disclosure of Dobson as an expert on the inadequacy of the warning labels attached to the ladder.  To support this claim, the Beaudettes cite two cases.  The first is not relevant.  Licciardi v. TIG Ins. Group, 140 F.3d 357, 363 (1st Cir. 1998) (noting that Fed. R. Civ. P. 26(e) "requires a party to inform another party of a material change in or addition to information contained in an expert's pre-trial report").  The second, Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., is relevant, but the Beaudettes incorrectly state the crucial facts. 240 F.3d 1 (1st Cir. 2001).  In Ferrara, we approved the late disclosure of an expert witness where it occurred three months prior to trial and a previously disclosed expert had died prior to the trial.  Id. at 8, 9-10.  The Beaudettes incorrectly state that in Ferrara we approved the late disclosure of an expert two weeks

prior to trial.[2]  Moreover, at the time of the Beaudettes' late disclosure, trial was scheduled for only five weeks away.  Given the short time until the scheduled trial date, we find that the district court did not abuse its discretion by refusing to accept the plaintiffs' late designation.

### C.  Necessity of Expert Testimony

Finally, the Beaudettes challenge the district court's finding that expert testimony is required for their claim of inadequate warnings.  In a diversity action, whether expert testimony is required is a matter of state law.  See Hochen v. Bobst Group, Inc., 290 F.3d 446, 451 (1st Cir. 2002) (applying Massachusetts state law to determine whether expert testimony was required to prove a design or manufacturing defect).  The New Hampshire Supreme Court has held that "[e]xpert testimony is required . . . to aid the jury whenever the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." Estate of Joshua T. v. State, 840 A.2d 768, 771 (N.H. 2003) (internal quotation marks omitted).

Under New Hampshire law, the question of whether it would be prudent to include specific warnings regarding the use of a common household object may be beyond the ken of the average

---

[2]  In Ferrara, we did allude to a late disclosure of expert testimony occurring two weeks before trial, but this was clearly not the issue on appeal.  See 240 F.3d at 10.

person.  For example, in <u>Lemay</u> v. <u>Burnett</u>, the New Hampshire Supreme Court affirmed the trial court's dismissal of a failure to warn case where the plaintiff had failed to designate an expert on swimming pools.  660 A.2d 1116 (N.H. 1995).  In that case, the plaintiff was injured while diving into a backyard swimming pool and claimed that the homeowner should have provided warnings as to the risk of diving into a pool.  The New Hampshire Supreme Court affirmed the case, noting that while a juror may be generally familiar with swimming pools, the average juror could not know what particular combination of conditions -- including water depth, height of the diving board, or the stiffness of the diving board -- could lead to reasonably safe diving conditions for a man of the plaintiff's size.  <u>Id.</u> at 1116-18.

        We find it clear that, under New Hampshire law, expert testimony is required for the Beaudettes' failure to warn claim. Although the average juror may have experience with ladders, the average juror will not have knowledge as to the use of a ladder jack, the construction of scaffolding out of ladders, and the combination of factors that would make such a situation safe or unsafe.  Consequently, the district court did not err in requiring expert testimony to sustain the Beaudettes' claims for failure to warn.

## III.

For the reasons stated above, we affirm the grant of summary judgment in favor of Louisville Ladder.

**<u>Affirmed</u>**.