# United States Court of Appeals
## For the First Circuit

No. 21-1442

TRESLAN A. WILLIAMS, as Personal Representative of the Estate of
Junior Williams,

Plaintiff, Appellant,

v.

KAWASAKI MOTORS CORP., U.S.A.; KAWASAKI HEAVY INDUSTRIES, LTD,

Defendants, Appellees,

KAWASAKI MOTORS MANUFACTURING CORP., USA; SPRINGFIELD MOTOR
SPORTS, LLC; KAWASAKI MOTORCYCLES USA, LLC; KAWASAKI HEAVY
INDUSTRIES (USA), INC., d/b/a Kawasaki Motorcycles USA, LLC,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Terrence L. Butler, with whom John Greenwood and Dodge Law
Firm, Inc. were on brief, for appellant.
Peter M. Durney, with whom Christopher J. Hurst and Cornell
& Gollub were on brief, for appellees.

March 28, 2022

**LYNCH**, <u>Circuit Judge</u>.  Plaintiff Treslan Williams, the personal representative of the estate of Junior Williams, appeals from the grant of summary judgment to defendants Kawasaki Heavy Industries, Ltd., the designer and manufacturer of Kawasaki brand motorcycles, and Kawasaki Motors Corp., U.S.A., the United States distributor of Kawasaki brand motorcycles (collectively, "Kawasaki").  Williams's suit alleged various Massachusetts-law claims based on a purported manufacturing defect in a Kawasaki motorcycle owned and ridden by Junior Williams.  Junior Williams suffered grievous injuries, including burns, when his 2007 Kawasaki ZX-6R motorcycle collided with a Jeep and a fire resulted.

The district court reasoned that the opinions of Williams's proffered liability expert, Dr. David Rondinone, as to defect and causation should be excluded under Federal Rule of Evidence 702 and <u>Daubert</u> v. <u>Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  As a result, Williams lacked expert testimony on these topics, and summary judgment was appropriate.

We affirm on different grounds.  Even assuming arguendo that Dr. Rondinone's testimony was admissible, Williams has not satisfied his burden of showing that a reasonable jury could find in his favor by a preponderance of the evidence on the element of causation.

## A.    Factual Background

We describe the allegations in the complaint.  On July 30, 2013, Junior Williams, while riding his Kawasaki motorcycle, collided with a Jeep, which was making a U-turn at an intersection in Springfield, Massachusetts.  His motorcycle struck the passenger-side door of the Jeep and slid under the Jeep.  The motorcycle's fuel tank burst, and a fire ensued.  Junior Williams suffered disfiguring second- and third-degree burns and underwent over twenty surgeries to treat his burn injuries.

## B.    Procedural History

On July 26, 2016, Junior Williams filed suit against Kawasaki in Massachusetts state court; the suit was removed to federal court based on the diversity of the parties.  See 28 U.S.C. § 1441.  On July 27, 2018, Junior Williams died by suicide. Treslan Williams thereafter filed an amended complaint substituting himself as the plaintiff in the action.  Williams's amended complaint asserts claims under strict product liability, negligence, breach of warranty, wrongful death, and survivorship causes of action.

## C.    Dr. David Rondinone's Opinions

On September 29, 2019, Williams disclosed Dr. David Rondinone as an expert witness, and on September 30, Dr. Rondinone provided an expert report.  Dr. Rondinone's deposition was taken

on November 19, 2019.  The district court considered both Dr. Rondinone's expert report and deposition testimony, as do we.

1.  Expert Report

Dr. Rondinone is a mechanical engineer by training and specializes in failure analysis.  He holds a PhD in mechanical engineering from the University of California, Berkeley and has taught the senior Mechanics of Materials course in the mechanical engineering department at Berkeley.  He works at Berkeley Engineering and Research Inc., where he has examined, analyzed, and tested welded structures and vehicular components.

Dr. Rondinone stated that he examined the 2007 Kawasaki ZX-6R motorcycle which was involved in the accident.  He examined the right-side frame weld of the motorcycle, which was fractured along its entire length.  He reconstructed a three-dimensional model of the right-side frame weld.  He then concluded that the frame weld was missing weld material along the length of the inner surface and lacked fusion at the base.

Dr. Rondinone also examined the left-side frame weld of the motorcycle:  It had a fracture which ran across the weld material and into the base material on both sides of the weld.  He separately examined exemplar Kawasaki motorcycles from the 2007, 2008, and 2009 model years.  Dr. Rondinone's employer obtained the exemplar motorcycles.  The 2007 exemplar motorcycle was the same make, model, and year of Williams's motorcycle.  Dr. Rondinone

- 5 -

removed the frames from the 2008 and 2009 models. He sectioned and measured the 2008 model's right-side frame weld. He did not remove the frame from the 2007 model or measure the 2009 model; he instead visually examined them. He compared the fractured right-side frame weld from Williams's motorcycle to each of the exemplar motorcycle frame welds.

Dr. Rondinone determined that during the accident, the right-side frame weld failed, allowing the frame to puncture the gas tank, which released the fuel that started the fire. He further noted that the right-side frame weld on Williams's motorcycle was (1) smaller and (2) weaker than the corresponding "weld on an exemplar motorcycle" and the matching left-side frame weld on William's motorcycle.

Dr. Rondinone summarized his conclusions as: "Mr. Williams' severe burn injuries were caused by the premature catastrophic failure of the defective right side frame weld on the subject motorcycle[.]" He specified:

> 1) The right-side frame weld on the subject motorcycle was defective. It lacked material relative to exemplar welds, and possessed pre-crack features that further reduced its strength.
>
> 2) The right-side frame weld prematurely failed. This failure allowed the frame to intrude into the volume occupied by the fuel tank. This intrusion fractured the tank, leading to the release of fuel and injuries to Mr. Williams. Had the frame weld not failed,

- 6 -

the tank would not have fractured and released fuel.

3) A competent risk assessment (e.g. Failure Modes and Effects Analysis – FMEA) in evaluating the subject weld and the effect on fuel containment should the weld fail would have revealed the hazard of tank failure in the case of frame weld failure. This should have triggered a further assessment of the weld quality control or weld design such that premature weld failure would be mitigated.

2.    Deposition Testimony

During his deposition, Dr. Rondinone was asked: "What proof do you have that the weld on the Williams motorcycle did not meet specifications for its weld?" He responded that Williams's motorcycle's right-side frame weld was defective because it had less weld material than the exemplar weld and the left-side frame weld on the motorcycle:

> So when you look at the subject weld, the one that failed on the subject motorcycle, it's clear that that weld does not have the amount of weld material that is present on the symmetric opposite side weld on the subject frame. It does not have as much material as the exemplar weld at the same location or the exemplar weld at the symmetric location.

In response to a question as to whether he had "reconstructed the accident," Dr. Rondinone admitted that he "h[adn't] been asked to," and in response to a question as to whether he knew what "the speeds were at [different] point[s]" during the accident, he admitted he did not. Dr. Rondinone conceded during deposition that he could not opine on whether the

forces during the accident would have fractured a proper, non-defective frame weld:

> Q    All right.  And are you ruling out also that at the moment of impact with the automobile, some significant forces were experienced by the entire front end of that motorcycle that would have fractured even a proper weld?
> A    That I'm not ruling out.
> Q    Okay.  But you don't -- you haven't done any analysis on that, have you?
> A    That's true.  I have not done the reconstruction; that's true.
> Q    All right. So you don't -- you can't tell me whether the forces were high enough that they would have fractured the best weld in the world?
> A    That I can't say, but I can say that the weld that did fail on the right side failed in a manner that demonstrates that the weld itself is inferior because a properly made weld will -- should fracture through the base material, as well as the weld material, and we see that exact same type of failure on the left side of the frame, and so although I can't say whether the forces would have been enough to break a proper weld, I can say that the subject weld was clearly improper and substandard simply by the method in which it failed.

Later in the deposition, Dr. Rondinone again confirmed that he could not offer an opinion on whether the forces in the accident would have fractured a proper frame weld:

> Q    You told me earlier in this deposition that you can't come to an opinion as to at what force a proper weld would fracture at that location on this frame; right?
> A    I have not done that calculation.
> Q    Okay.  So you don't -- you -- and we also agreed that you can't tell me whether the forces seen by the weld in this accident

- 8 -

exceeded the forces necessary to fracture a
proper weld; right?
A    That's still true.

## II.

Kawasaki moved for summary judgment arguing, inter alia, that Dr. Rondinone's expert opinions were inadmissible. Kawasaki separately filed a motion to exclude Dr. Rondinone's opinions. On July 14, 2020, the district court held a hearing on Kawasaki's motion for summary judgment. During the hearing, both parties agreed that there was no need for a separate Daubert evidentiary hearing. 509 U.S. 579.

On May 18, 2021, the district court granted Kawasaki's motion for summary judgment. The court held that Dr. Rondinone's expert testimony was inadmissible under Rule 702 because there was "too large an analytical leap" between the data that Dr. Rondinone examined and the opinions that he offered. In particular, the court held that:

> [Dr. Rondinone] had no basis for determining that the welds on the comparison frame reflected the proper sizing for the frame welds; that all welds, including those that did not fail, were subjected to the same forces in the crash; or that the analogous weld on the frame of the comparison motorcycle would not have failed under the circumstances of the crash.

The court then granted summary judgment for Kawasaki, holding that without Dr. Rondinone's opinion, Williams could not establish the existence of a manufacturing defect in the motorcycle or prove

that the alleged defect in the right-side frame weld caused Junior Williams's injuries.

Williams timely appealed.

## III.

### A. Standard of Review

We review de novo a district court's grant of summary judgment. See Forbes v. BB&S Acquisition Corp., 22 F.4th 22, 25 (1st Cir. 2021). "[W]e examine the evidence and all fair inferences in the light most favorable to the non-movant and determine whether the non-movant has offered 'more than a mere scintilla of evidence,' warranting the submission of the issue to the jury." Hochen v. Bobst Grp., Inc., 290 F.3d 446, 453 (1st Cir. 2002) (quoting Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir. 1996)). Under this standard, "we may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Id. (cleaned up) (quoting Katz, 87 F.3d at 28). We affirm the district court's grant of summary judgment "only if, 'applying these standards, the evidence does not permit a reasonable jury to find in favor of' appellant[]." Id. (quoting Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 26 (1st Cir. 1998)).

### B. Analysis

Under Massachusetts law, Williams bears the burden of proving causation by a preponderance of the evidence for each of

- 10 -

the claims brought here. See Stepakoff v. Kantar, 473 N.E.2d 1131, 1136 (Mass. 1985) (wrongful death); Hayes v. Ariens Co., 462 N.E.2d 273, 278 (Mass. 1984) (breach of warranty), abrogated on other grounds by Vassallo v. Baxter Healthcare Corp., 696 N.E.2d 909 (Mass 1998); Coyne v. John S. Tilley Co., 331 N.E.2d 541, 544-45, 548 (Mass. 1975) (negligence); see also Brown v. Husky Injection Molding Sys., Inc., 751 F. Supp. 2d 298, 304 n.13 (D. Mass. 2010) ("[T]he crucial issue is often whether the plaintiff's proof sufficiently establishes that the accident was attributable to a manufacturing defect as opposed to some other plausible cause -- such as normal wear and tear or the conduct of the user or someone else." (alteration in original) (quoting D.G. Owen, Manufacturing Defects, 53 S.C. L. Rev. 851, 859 (2002))). The plaintiff is required to show "a greater likelihood that his injury was caused by the defendant's negligence than by some other cause." Coyne, 331 N.E.2d at 547 (quoting Jankelle v. Bishop Indus. Inc., 238 N.E.2d 374, 376 (Mass. 1968)).

In cases where, as here, the nature of the defect and its causal relationship to the accident are complex, expert testimony is necessary to establish these elements. See Goffredo v. Mercedes-Benz Truck Co., 520 N.E.2d 1315, 1318-19 (Mass. 1988); see also Hochen, 290 F.3d at 451.

Here, Williams's evidence was not sufficient to permit a reasonable jury to find by a preponderance of the evidence that

the alleged manufacturing defect in the right-side frame weld caused Junior Williams's injuries.

Dr. Rondinone was Williams's sole expert witness on liability, and he did not offer an opinion that the alleged defect in the right-side frame weld caused the weld to fail when it otherwise would not have.  Indeed, Dr. Rondinone conceded during his deposition that he had not "done any analysis" to determine whether "some significant forces were experienced by the entire front end of that motorcycle that would have fractured even a proper weld," and he stated that he "c[ouldn't] say whether the forces [during the impact] would have been enough to break a proper weld."  At deposition, he also admitted that he "c[ouldn't] tell . . . whether the forces seen by the weld in this accident exceeded the forces necessary to fracture a proper weld."  It is possible to glean from Dr. Rondinone's testimony the seeds of a more nuanced theory of causation.  While Rondinone conceded that he did not know if a proper right-side weld "would have fractured," he also stated that a proper weld -- if it fractured -- would have fractured in a different direction:  "through the base material." Williams, though, did not advance below and does not advance on appeal this more precise reading of Dr. Rondinone's testimony. More importantly, Dr. Rondinone never closed the causal loop by opining that, had the right-side weld fractured through the base material, the fire would most likely not have occurred.

- 12 -

Without any expert testimony on the complex question of causation presented by this case, Williams has not shown that there is "'more than a mere scintilla of evidence,' warranting the submission of the issue to the jury." Hochen, 290 F.3d at 453 (quoting Katz, 87 F.3d at 28); see Goffredo, 520 N.E.2d at 1318 ("[T]his was not a case in which the jury could have found, of its own knowledge, that the defendant had improperly designed the latch mechanism.").

Williams argues that he can show causation because "[t]here is no question that the subject weld on the motorcycle failed, puncturing the fuel tank resulting in a fire that injured Junior Williams." Even assuming arguendo that this conclusion is well-supported by the record and Dr. Rondinone's testimony, Williams's argument misses the relevant causation question. The causation question in this case is not whether the right-side frame weld's failure caused Junior Williams's injuries; rather, the relevant question is whether the alleged manufacturing defect to the right-side frame weld caused the injuries. Dr. Rondinone admitted that he could not offer an opinion on whether a properly manufactured weld would have failed in this accident. His testimony failed to establish the necessary causal link between the manufacturing defect and Junior Williams's injuries.

Williams further argues that Kawasaki did not reconstruct the accident or perform any tests and "has no basis

for suggesting that the forces from the impact would have failed every weld at the subject location of the motorcycle." Williams's argument fails because it misstates the relevant burden of proof. It is the plaintiff that bears the burden of proving causation by a preponderance of the evidence. See Goffredo, 520 N.E.2d at 1318; Coyne, 331 N.E.2d at 544.

For the reasons stated above, we affirm the entry of summary judgment for defendants.