Eduarda ALVES, Plaintiff,

v.

**MAZDA MOTOR OF AMERICA, INC.,**
**Mazda Motor Corporation,**
**Defendants.**

**C.A. No. 02–11136–MLW.**

United States District Court,
D. Massachusetts.

Aug. 21, 2006.

Nicholas A. Felici, Feinberg & Felici, Burlington, MA, for Plaintiff.

Marie E. Chafe, Peter M. Durney, Cornell & Gollub, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

## I. SUMMARY

Plaintiff Eduarda Alves seeks damages from Mazda Motor of America and Mazda Motor Corporation as a result of an injury she suffered when her Mazda automobile collided with another vehicle in 2000. As described in detail in this Memorandum, the court repeatedly extended the deadline for discovery and, particularly, for Alves' expert disclosures required by Federal Rule of Civil Procedure 26(a)(2).

Alves failed to make the required expert disclosures by the last, March 1, 2005, deadline. The defendants filed a third motion, pursuant to Federal Rule of Civil Procedure 37(c)(1), to exclude the expert evidence Alves belatedly proffered. Defendants also moved for summary judgment.

As the First Circuit has regularly and recently explained, the exclusion of expert evidence is the required sanction for a violation of Rule 26(a)(2) in the ordinary case. Consideration of the relevant factors demonstrates that it is a particularly appropriate sanction in this case.

Even with Alves' expert evidence, defendants' motion for summary judgment appears meritorious. It is clearly meritorious when, as here, that expert evidence is excluded. Therefore, defendants' motions are being allowed and judgement will enter for the defendants.

## II. FACTS

Unless otherwise indicated, the undisputed facts include the following. On October 12, 2000, Alves was injured in an automobile accident while riding in the 1994 Mazda 626 car that she owned. Alves alleges that the accident occurred at a low speed and that the air bag in her vehicle should not have deployed. However, the air bag did deploy during the accident. Alves, who is a short woman, alleges that it hit her in the eyes and caused her to become blind.

This case was initiated in the courts of the Commonwealth of Massachusetts and removed to this court on June 6, 2002. Alves is now suing defendants Mazda Motor Corporation and Mazda Motor of America, based on three theories: negligent and defective design (Counts I and IV), failure to warn (Counts II and V), and breach of implied warranty (Counts III and VI).

Alves' vehicle, and therefore much of the evidence in this case, has been lost. After the accident, Alves was hospitalized and, according to her responses to interrogatories, she does not know what happened to her vehicle. Pl. Opp. to Mot. for Sum. Jdgmt. (Dkt. No. 107) Ex. L at 14. The parties agree that the vehicle was eventually declared a total loss by Alves' insurance company and that the insurance company sold the vehicle to a salvage company, which exported it to Guatemala. Alves' attorney, Nicholas Felici, claims that before the insurance company sold it, he requested permission to inspect the vehicle, but received no response. The parties agree that the vehicle was sold before the defendants were informed of the accident. Therefore, they had no opportunity to inspect it.

A scheduling conference was held on February 13, 2003. After consulting the parties, the court issued a Scheduling Order which provided that: any additional proposed party was to be served by February 28, 2003; Alves was to designate her expert(s) and file the expert report(s) required by Federal Rule of Civil Procedure 26(a)(2) by May 30, 2003, and the sole defendant at that time, Mazda Motors of America, was to do the same by July 25, 2003; all discovery was to be completed by December 31, 2003; and, if the case was not otherwise resolved, trial would commence on March 8, 2004. Feb. 13, 2003 Scheduling Order (Dkt. No. 15).

During the more than four years that this case has been pending in this court, Alves' counsel, Felici, has repeatedly missed the deadlines the court set for Alves to disclose her expert reports. Initially, the May 30, 2003 deadline for Alves' expert disclosure passed, but the plaintiff did not disclose her experts as ordered. See Joint Motion to Extend Expert Deadlines (Dkt. No. 22) ¶ 3. On June 2, 2003,

the plaintiff served an "Expert Designation" stating that the plaintiff intended to call an engineer named Ralph Ridgeway to testify on her behalf and that "[p]ending what he learns in discovery, Mr. Ridgeway is expected to opine that a properly designed and properly functioning air bag would not have deployed under the scientific facts and circumstances of this low impact collision thereby causing the Plaintiff's injuries." Def. 56.1 Stat. (Dkt. No. 105) Ex. A at 1–2. However, that designation did not include a report by Ridgeway or any of the other information required by Federal Rule of Civil Procedure 26(a)(2).

After the plaintiff had missed her deadline for disclosure but before the defendant's deadline to disclose experts, the parties on July 14, 2003, filed a joint motion to extend the times at which they were required to make Rule 26(a)(2) disclosures. See Joint Motion (Dkt. No. 22). The court granted the motion, giving Alves until August 14, 2003, to make them. See July 29, 2003 Electronic Order. Alves, however, did not meet this deadline either. Defendant's Rule 56.1 Statement (Dkt. No. 105) ("Def. 56.1 Stat.") ¶ 6; Plaintiff's Rule 56.1 Statement (Dkt. No. 108) ("Pl. 56.1 Stat.") ¶ 5.

On October 15, 2003, about seven months after the deadline for serving all proposed parties, the plaintiff filed a motion to add a second defendant to the case. See Feb. 13, 2003 Scheduling Order; Mot. to Amend Complaint (Dkt. No. 25). According to Alves, she had recently discovered that the sole defendant, Mazda Motor of America, had not manufactured or installed the air bag in her vehicle, and she therefore sought to add Mazda Motor Corporation, a Japanese company that she then believed was the manufacturer.

Mazda Motor Corporation of America opposed the motion to amend. It argued

that from the beginning of the case it had denied that it designed or manufactured Alves' vehicle and that it had stated in its corporate disclosure statement that Mazda Motor Corporation had designed it. The defendant noted that the plaintiff's motion was untimely and that adding a third party would "radically remake the litigated issues of this case, significantly affect the defendant's trial strategy, and greatly extend discovery deadlines." Def. Opp. (Dkt. No. 26) at 5. As described earlier, the deadline for discovery was then December 31, 2003. Therefore, allowing Alves to add a new defendant at that stage threatened to catapult the case back to the beginning.

The court denied Alves' motion to amend, essentially for the reasons stated in the defendant's opposition. *See* Dec. 29, 2003 Order (Dkt. No. 30). She subsequently filed a motion to reconsider.

On January 12, 2004, the defendant filed a motion to preclude the plaintiff's proposed expert, Ridgeway, from testifying or otherwise providing evidence, because Alves had repeatedly missed the deadline to disclose his report and still had not done so. *See* Motion to Preclude Testimony of Pltf's Expert Ralph Ridgeway, and the Use of Any Information Not Timely Disclosed in Acc. With Rule 26(a)(2)(B) (Dkt. No. 33).

At a hearing on June 3, 2004, the court relented and allowed Alves to amend her complaint to add Mazda Motor Corporation as a defendant. At that hearing, the court also addressed the defendant's motion to preclude. Since discovery in this case was essentially starting over, the court denied the defendant's motion to preclude without prejudice. *See* June 4, 2004 Order (Docket No. 45). At an October 12, 2004 conference, the court issued a new Scheduling Order (Dkt. No. 66). The plaintiff was ordered to make her Rule 26(a)(2) expert disclosures by March 1, 2005. *Id.*

However, the plaintiff did not meet this third deadline for expert disclosures either. Although she made a "preliminary disclosure" on February 28, 2005, that disclosure did not include the expert report required by Rule 26(a)(2). *See* Pl. Prelim. Expert Discl. (Dkt. No. 72). In her "preliminary disclosure," Alves stated that one of the defendants was "presently providing scientific discovery including crash test videotapes as well as air bag specifications and manuals." *Id.* As a result, Alves said she would file the report required under Rule 26 after reviewing this discovery, "including deposition of the Rule 30(b)(6) safety engineer for Mazda Motor Corporation." *Id.* at 2.

On March 24, 2005, more than three weeks after the plaintiff's deadline to make Rule 26 expert disclosures, Alves sent the defendants a notice of deposition under Rule 30(b)(6), seeking to depose a corporate officer about safety issues. *See* Def. Mot. For Protective Order (Dkt. No. 73) at 4. The defendants responded on April 19, 2005, by filing a motion for a protective order seeking to require the plaintiff to depose Mazda Motor Corporation employees in Japan. *Id.*

On April 1, 2005, defendants made their expert disclosure as required by the October 12, 2004 Scheduling Order, despite the fact that Alves had not done so first as the court had ordered. Therefore, defendants' experts could not address Alves' expert's specific contentions as the court contemplated when it issued the Scheduling Order.

On April 11, 2005, the plaintiff provided a "preliminary" report from Ridgeway to supplement the plaintiff's February 28, 2005, "preliminary" disclosure. *See* Def. 56.1 Stat. (Dkt. No. 105) ¶ 29 and Ex. Q.

On May 13, 2005, the defendants filed a second motion to preclude the plaintiff's expert because the plaintiff had disclosed him late. *See* Memo. in Support of Motion to Preclude (Dkt. No. 81).

Before filing an opposition to the motion to preclude, Alves' attorney attempted to introduce a second expert, who had not been mentioned previously, an engineer named Thomas Lacek. More specifically, on June 13, 2005, Felici filed an "Additional Expert Disclosure," stating that he would be using Lacek as a "supplemental" expert and including a "preliminary report." *See* Addtl. Expert Disclosure (Dkt. No. 84).

On July 8, 2005, the defendants filed a motion to preclude Lacek because he was disclosed months after the plaintiff's March 1, 2003 deadline for plaintiff's Rule 26(a)(2) submissions. *See* Mot. for Preclusion (Dkt. No. 85). The plaintiff opposed both motions to preclude, claiming that "it has been the Defendants themselves which have been the source of Plaintiff's late filing of her expert's disclosure and supplemental expert's disclosure." Opp. to Mot. to Preclude (Dkt. No. 87) at 1.

At a hearing on August 23, 2005, Felici represented that he had not been able to meet the March 1, 2005 deadline for Alves' Rule 26(a)(2) expert disclosures because he was having a discovery dispute with the plaintiff when the disclosure deadline passed. *See* Aug 23, 2005 Tr. at 19–32; Aug. 24, 2005 Order (Dkt. No. 92). The alleged discovery dispute related to a request for documents production that Felici sent to the defendants on January 5, 2005 and to a purported effort Felici had been

making to obtain a Rule 30(b)(6) deposition of a safety engineer. Aug. 23, 2005 Tr. at 19–32. The defendants had responded to the document request on February 3, 2005. At the August 23, 2005 hearing, Felici stated that he had been dissatisfied with the defendant's response and that he had then written letters to the defendants in an attempt to get more information.[1] *Id.*

Defendants' counsel, Mary Chafe, denied that there had been a discovery dispute, stating that "I have at no time heard of any problems with our discovery responses, and so I do find it quite troubling that [ ] the conduct [of] the discovery is being raised here. There has been no motion to compel filed. There's been no correspondence whatsoever requesting supplementation." Aug. 23, 2005 Tr. at 26. When asked by the court, Felici was unable to produce the purported letters at the hearing. *Id.* at 29.

Felici also claimed that he could not file his experts' reports by March 1, 2005, in part because he had not yet had a Rule 30(b)(6) deposition of a safety engineer from Mazda. *Id.* at 23.

In view of Felici's representations, the court denied defendants' motion to preclude plaintiff's experts without prejudice to possible reconsideration in connection with the anticipated motion for summary judgment or trial, and it authorized the defendants to depose the plaintiff's experts. Aug. 24, 2005 Order (Dkt. No. 91). The court also ordered Felici to file the purported correspondence on August 24, 2005, or file an affidavit explaining why he had represented at the August 23, 2005

---

1. At the August 23, 2005, hearing, the court specifically asked Attorney Felici if he had written letters concerning the purported discovery dispute. Felici stated:

 MR. FELICI: There was quite a bit of discovery that was objected to and not pro-

 duced, and we've corresponded back and forth regarding my—

 THE COURT: Corresponded by sending letters?

 MR. FELICI: Yes. . . .

 Aug. 23, 2005 Tr. at 27–28.

hearing that such correspondence exists. *Id.*

Felici submitted several letters the next day. They revealed that his claim on August 23, 2005, that he had corresponded by letter about relevant discovery disputes with Chafe prior to the March 1, 2005 deadline for plaintiff's expert disclosures was a misrepresentation. As the court wrote in a second August 24, 2005 Order (Dkt. No. 92):

> At the August 23, 2005 hearing, Nicholas Felici, Esq., counsel for plaintiff Eduarda Alves, represented that after he received the defendants' February 3, 2005 response to his January 5, 2005 request for production of documents he corresponded by letter with defendants' counsel to express his dissatisfaction. This issue was relevant to whether there was substantial justification for plaintiff's failure to provide her expert report by March 1, 2005, as previously ordered. Therefore, the court ordered Mr. Felici to produce today the referenced correspondence or an affidavit explaining why he had erroneously represented that such correspondence existed. *See* August 24, 2005 Order, ¶ 3 (memorializing August 23, 2005 oral order).
>
> The correspondence filed today by Mr. Felici does not include any expressing dissatisfaction with defendants' response to the January 5, 2005 request for production of documents. Therefore, Mr. Felici shall, by 4:00 p.m. on August 25, 2005, file the affidavit required by paragraph 3 of the August 24, 2005 Order. Among other things, the affidavit will be relevant to whether the court should, in connection with defendants' anticipated motion for summary judgment, grant a renewed request to exclude plaintiff's expert reports.

Aug. 24, 2005 Order (Dkt. No. 92) (footnote omitted).

In his August 26, 2005 affidavit, Felici asserted he had "orally corresponded with opposing counsel." Felici Aff. (Dkt. No. 114) ¶ 3. This contradicted his express statement at the August 23, 2005 hearing that he had corresponded with her by letter. In any event, the court finds Felici did not correspond or otherwise communicate with defendants' counsel in a timely manner concerning discovery he felt was needed before making the expert disclosures required on March 1, 2005. Indeed, as described earlier, he did not even notice the Rule 30(b)(6) deposition he claims was necessary until after the March 1, 2005 deadline.

Defendants took the depositions of Ridgeway and Lacek. They subsequently filed a third motion to preclude plaintiff's experts from providing evidence and requested summary judgment. Alves submitted an opposition, to which defendants filed a reply. A lengthy hearing on the motion was held on August 11, 2006.

## III. ANALYSIS

Defendants' motion seeks exclusion of the evidence that would be provided by Alves' experts because she disclosed them late. Defendants also assert that their testimony does not meet the requirements for admissibility of Federal Rule of Evidence 702 because they lack the necessary expertise, their methodology is unreliable and, in any event, they have not applied that methodology reliably to the facts of this case. In addition, the defendants ask the court to preclude the expert testimony because they claim the plaintiff is guilty of spoliating evidence by failing to preserve her damaged car. Finally, the defendants argue that even if the plaintiff's experts were allowed to testify, she does not have sufficient evidence to prove her claims of negligent design, breach of warranty, or failure to warn. As a result, they ask the

court to grant them summary judgment regardless of whether Alves' experts are able to provide admissible evidence.

■■■ Defendants' motion to exclude plaintiff's experts' evidence because of their late disclosure is governed by Federal Rule of Civil Procedure 37(c)(1), which states:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

This Rule generally provides for exclusion of a party's experts unless she had "substantial justification" for disclosing them late or unless her late disclosure was "harmless." *See* Fed.R.Civ.P. 37(c)(1). The plaintiff has the burden of proving substantial justification or harmlessness. *Saudi v. Valmet–Appleton, Inc.,* 219 F.R.D. 128, 132 (E.D.Wis.2003) ("The party to be sanctioned must show that its violation of Rule 26(a) was either 'substantially justified' or 'harmless.' "). In addition to, or in lieu of, exclusion, the court is also authorized to impose "other appropriate sanctions," including "reasonable expenses" and "attorney's fees" caused by the late disclosure. Fed.R.Civ.P. 37(c)(1).

■■ As the First Circuit has recently explained, "expert preclusion orders[s] ... fall[ ] in the heartland of case management decisions—the area where a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through the court." *Gagnon v. Teledyne Princeton, Inc.,* 437 F.3d 188, 191 (1st Cir.2006). The First Circuit went on to explain that:

> In *Primus v. United States,* 389 F.3d 231 (1st Cir.2004), we stressed that "[t]he adoption of Rule 37(c)(1) in 1993 'gave teeth to a significantly broadened duty' to comply with case management orders." *Id.* at 234 (citation omitted). Our view of the effect of this rule is well stated in *Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998), where we declared that it "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches ···, and the required sanction in the ordinary case is mandatory preclusion."

*Id.; see also Primus,* 389 F.3d at 235 ("Mandatory preclusion [is] the required sanction in the ordinary case)."

In *Gagnon,* the First Circuit provided valuable guidance on the standards for deciding a Rule 37(a)(1) motion. *Gagnon* did not involve "a series of missed deadlines." *Id.* at 195. Moreover, as the First Circuit described it, *Gagnon* was not "a tale of lack of effort, of bland disobedience of a series of court orders, or of unsavory scheming, but of what the district court could reasonably view as a miscalculated strategy topped by an inexcusable failure to observe a long-established deadline." *Id.* at 197. The First Circuit held that the district court did not abuse its discretion in implicitly finding on these facts that the failure to make disclosures in a timely manner was not substantially justified. *Id.*

The instant case also involves an inexcusable failure to observe the long-established March 1, 2005 deadline and much more as well. In this case, Alves' attorney, Felici, missed many deadlines for expert disclosure, never seeking an extension from the court before the deadline had passed. Felici did not make an earnest or adequate effort to meet the March 1, 2005 deadline. For example, he did not even notice the Rule 30(b)(6) deposition of the safety engineer of Mazda Motor Corporation, which he now claims was needed as a predicate to Alves' expert disclosures, until March 24, 2005. Felici not only missed the long-established deadline for expert disclosures, he misrepresented material facts in an effort to evade the granting of defendants' second motion to preclude, which the court addressed at the August 23, 2005 hearing. Therefore, there is considerably less justification for the failure to make timely disclosure in this case than in *Gagnon*.

In any event, Alves has not proven that there was substantial justification for her failure to make her Rule 26(a)(2) disclosures by March 1, 2005. This conclusion is not qualified by any of plaintiff's arguments.

Alves contends that her failure to meet the March 1, 2005 deadline for expert disclosures was justified, in part, because in June 2003 she filed what Felici characterizes as a "preliminary" disclosure which identified Ridgeway as her expert. That document contained only a few sentences by Felici describing what Ridgeway might testify after he completed his research. It was not a report of Ridgeway's at all, let alone the comprehensive report required by Rule 26(a)(2).[2] The report of Ridgeway required by Rule 26(a)(2) was not provided until April 11, 2005.

The Rule 26(a)(2) disclosure regarding Lacek was provided to defendants on June 13, 2005, more than three months after the deadline for expert disclosures and after the defendants had filed another motion to preclude expert testimony. Lacek became involved in this case after being asked by the company for which Ridgeway and he worked to review Ridgeway's draft report. Alves asserts that after Lacek reviewed Ridgeway's draft:

2. Rule 26(a)(2) states:
(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

it was determined that since Mr. Lacek was vastly more experienced in the field of physics, kinetics, dynamics, and biomechanics—*Lacek deposition* at p. 197—it would be appropriate for him to review the large volume of available materials in this case in order to supplement Mr. Rideway's (sic) report on the issue of injury causation. *Lacek* deposition, pp. 19, 151–153. Immediately, Plaintiff's counsel disclosed Mr. Lacek as a supplemental expert and notified Defendants that upon his review of the voluminous materials, Mr. Lacek would provide an expert disclosure pursuant to Fed. R.Civ.P. 26(a)(2).

Pl. Opp. to Mot. for Sum. Jdgmt. (Dkt. No. 107) at 6–7.

However, if the plaintiff had been diligent in prompting the preparation of Ridgeway's report, Lacek would have reviewed a draft well before the March 1, 2005 deadline. Lacek and Ridgeway could then have been included in a timely Rule 26(a)(2) disclosure. The fact that there was unjustified delay in developing and disclosing Ridgeway's opinions does not provide substantial justification for the even later disclosure of Lacek's opinions.

Finally, Alves contends that pending discovery disputes provided substantial justification for missing the March 1, 2005 expert disclosure deadline. As described earlier, this unverified assertion contributed to the court's decision not to grant defendants' second motion to preclude on August 23, 2005. Felici's responses to the subsequent Orders demonstrates that he made material misrepresentations to the court at the August 23, 2005 hearing. As of March 1, 2005, he had not, as he claimed, corresponded with defendants' counsel to obtain additional discovery purportedly needed for preparation of plaintiff's expert report(s). Nor had Felici then noticed the Rule 30(b)(6) deposition that he later claimed was necessary for his experts to develop their opinions.

Moreover, if there had been a genuine and important discovery dispute, Alves' counsel should have filed a motion to compel any needed evidence and a motion to extend again the March 1, 2005 deadline. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan International Inc.*, 2006 WL 1084422, \*2 (C.D.Ill. April 21, 2006) ("fact discovery 'problems' might explain [a party's] inability to timely disclose experts," but do not excuse party from seeking an extension prior to the deadline).

In view of the foregoing, Alves has not borne her burden of proving that there was substantial justification for failing to meet the March 1, 2005 deadline for expert disclosures.

Nor has the plaintiff proven that her late disclosures were harmless. As the First Circuit wrote in *Gagnon*, 437 F.3d at 197:

> The Advisory Committee notes to the 1993 amendments to the rules state that the harmlessness provision is intended 'to avoid unduly harsh penalties in a variety of situations.' Illustrative examples are late disclosures of a potential witness known to all parties, a trial witness already listed by the adverse party, or a witness on behalf of a pro se litigant ignorant of the requirement. These suggest a fairly limited concept of "harmless."

*Id.* The facts of this case do not match any of these examples of harmlessness. Alves is represented by an attorney she retained, who was well-aware of the March 1, 2005 deadline for her expert disclosure. While Ridgeway had previously been identified as an expert witness, as of March 1, 2005 his opinions were not described in the

manner required by Rule 26(a)(2) or otherwise adequately communicated to the defendants. As of March 1, 2005, Lacek had not been mentioned at all. Therefore, this case does not fit the conventional paradigms for finding "harmlessness."

■ This is, however, not the end of the inquiry. As the First Circuit also explained in *Gagnon:*

"[T]rial judges must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets." This means that

The court of appeals must consider a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, and the opponent's ability to overcome its adverse effects. Surprise and prejudice are important integers in this calculation. So too is an assessment of what the late disclosure portends for the court's docket.

*Gagnon*, 437 F.3d at 197–98 (quoting *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003)). This court must also consider and balance these factors.

The history of this litigation weighs heavily in favor of excluding Alves' experts. The schedule originally established by the court required discovery to be completed by December 31, 2003 and for the case to be tried, if necessary, on March 8, 2004—more than two years ago. The court reluctantly agreed to let discovery virtually begin again when it reconsidered its initial decision and granted Alves' belated motion to add Mazda Motor Corporation as a defendant. The court also granted plaintiff several extensions of the deadline for expert discovery, even when no timely request had been made by her. Nevertheless, Alves' counsel, Felici, continued to disregard the requirements of Rule 26(a)(2) and this court's Orders, and

then misrepresented his reasons for doing so.

As described earlier, there was no legitimate, let alone substantial, justification for plaintiff's failure to make her Rule 26(a)(2) expert disclosures by March 1, 2005.

Plaintiff's conduct of this litigation has severely injured this court's ability to manage its busy docket efficiently and effectively. This is now one of the oldest cases on the court's docket. Multiple scheduling conferences have been necessary. Much time has been spent by the court in preparing for and conducting hearings on several substantial motions to preclude plaintiff's expert testimony. Added effort was required for the court to discern that Felici had made material misrepresentations at the August 23, 2005 hearing. All of this has diverted the court from focusing on the other matters, which are, like this case, important.

Defendants could, if necessary, overcome the effects of Alves' late disclosure. The disclosure did not come on the eve of trial. After denying defendants' second motion to preclude without prejudice, the court allowed defendants to take the depositions of Alves' proposed experts.

Nevertheless, as in *Gagnon*, defendants have had to repeatedly invest effort in litigating issues arising from plaintiff's recalcitrance regarding the disclosure of her experts. *Id.* at 198. Moreover, "prejudice also exists in their having prepared a dispositive motion for summary judgment predicated on the preclusion of the expert testimony." *Id.*

Although this is not a case in which the court would otherwise award reasonable attorneys' fees and costs in lieu of exclusion of the evidence, such an award does not appear to be a viable option in any event. At the August 14, 2006 hearing, defendants estimated that the amount of

those fees and costs are about $65,000. According to Felici, neither he nor Alves could afford to pay a sanction in that range. Therefore, defendants would suffer at least some financial prejudice if the testimony of Ridgeway and Lacek is not excluded.

■ Finally, the value of the challenged evidence to Alves also favors preclusion or, at least, indicates that exclusion of the evidence will not materially affect the outcome of the case. As explained below, the court recognizes that to prove her claims the plaintiff needs to introduce adequate expert testimony. However, any expert testimony would have to be admissible, and that admissible testimony would need to be sufficient to survive a motion for summary judgment. As also explained below, plaintiff's experts do not offer admissible testimony. It also appears that their testimony would not be sufficient to defeat defendants' motion for summary judgment. As a result, the ultimate harm to plaintiff from the exclusion of their evidence is minimal.

■ First, to prevail in this case, the plaintiff must introduce expert testimony. Under Massachusetts law, when "[t]he nature of the defect or breach of warranty and its causal relation to the accident [are] complex," a plaintiff must introduce expert testimony. *Hochen v. Bobst Grp., Inc.*, 290 F.3d 446, 451 (1st Cir.2002). Here, the plaintiff is claiming that the air bag system in her car was defective or negligently designed. Air bag systems are so complex that a plaintiff must introduce expert testimony to prove a defective design or breach of warranty. *White v. Nis-*

*san Motor Corp.*, 1999 WL 819566, at *3 (Mass.Super.Ct. Aug. 23, 1999) (expert testimony necessary when knowledge of alternate designs not within lay knowledge of jury); *Britt v. Chrysler Corp.*, 699 So.2d 179, 181 (Ala.1997) (because "air bag system is comprised of clock spring sensors, diagnostic units, and an airbag/inflator unit," it is "precisely the type of complex and technical commodity that [requires] expert testimony to prove an alleged defect"); *Wood v. Toyota Motor Corp.*, 134 Md.App. 512, 760 A.2d 315, 318 (2000) (expert required in air bag deployment and defect cases); *Caudill v. Toyota Motor Corp.*, 2005 WL 3149311, *2–3 (E.D.Ky. Nov. 23, 2005) ("the deployment or non-deployment of air bags is not a matter within the common knowledge of lay persons"). Therefore, the plaintiff would need to introduce expert testimony to prevail on her design defect and breach of warranty claims.

To do that, Alves seeks to introduce testimony from Lacek and Ridgeway. Ridgeway and Lacek each examined photographs of the damage to Alves' vehicle. Based on those photographs, each attempted to calculate the "barrier equivalent velocity"[3] at which her vehicle crashed. *See* Ridgeway Dep. in Def. 56.1 Stat. (Dkt. No. 105) Ex. S at 44–45, 70; Lacek Dep. in *id.* Ex. X at 50–51, 59.

Mazda's product brochure states that the air bags will deploy in a frontal collision in a 14 mph -or greater impact with a solid wall. Def. Mem. Ex. 15 at 2. Alves' experts interpret this to mean that Mazda's air bag should have deployed only if she crashed at a barrier equivalent velocity

---

**3.** "A vehicle's barrier equivalent velocity in a crash is the velocity with which the car would have to impact an infinitely rigid barrier at the same angle of impact in order to sustain the same damage as actually occurred. The barrier equivalent velocity 'combine[s] into one speed-like measure the energies, forces, and motions that a vehicle experiences during a crash.' " *Smith v. BMW North America, Inc.*, 308 F.3d 913, 915 n. 1 (8th Cir.2002) (citing cases).

of 14 miles per hour or higher. Ridgeway Report in Pl. Opp. to Mot. for Sum. Jdgmt. (Dkt. No. 107) Ex. A2 at 4; Lacek Report in *id.* Ex. F at 4.

Ridgeway concluded that Alves was traveling at a barrier equivalent velocity of 6 miles per hour. Ridgeway Dep. in Pl. Opp. to Mot. for Sum. Jdgmt. (Dkt. No. 107) Ex. A at 155–57. Lacek concluded that she was traveling at a barrier equivalent speed of 9 miles per hour. Lacek Report in Def. 56.1 Stat. (Dkt. No. 105) Ex. V at 7. Since the barrier equivalency speeds each estimated is lower than 14 miles per hour, Ridgeway and Lacek each concluded that Alves' air bag should not have deployed and that it was defective.

Before the court may allow Ridgeway or Lacek to testify or otherwise offer evidence, it must ensure that their testimony would be admissible. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (court must act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable"). Under Federal Rule of Evidence 702, which codified *Daubert,* this court may admit a qualified expert's testimony [4] under three conditions. First, the expert's "specialized knowledge" must "assist the trier of fact to understand the evidence or to determine a fact in issue"; second, the testimony must be "based upon sufficient facts or data"; third, the testimony must be "the product of reliable principles and methods," which the witness must have applied "reliably to the facts of the case." Fed.R.Evid. 703. Here, the testimony of Lacek and Ridgeway would not be admissible because they did not use

a methodology that is reliable in the circumstances of this case and did not apply their methodology reliably to the facts of this case.

To estimate the barrier equivalent velocity at which Alves crashed, both Ridgeway and Lacek used a methodology they obtained from a paper entitled "Energy Basis for Collision Severity" by Kenneth Campbell. Lacek Dep. in Def. 56.1 Stat. (Dkt. No. 105) Ex. X at 59; Ridgeway Dep. in *id.* Ex. S at 70. In that paper, Campbell developed a model to allow accidentologists to estimate the barrier equivalent velocity of a crash based on the damage to the vehicle. Ridgeway and Lacek estimated the amount of damage to Alves' vehicle based on photographs and used Campbell's method to estimate barrier equivalent velocity.

Although the method explained in Campbell's paper appears to be reliable for certain purposes, it is not reliable for the circumstances of this case, and Lacek and Ridgeway did not apply the method reliably to the facts of this case. Early in "Energy Basis for Collision Severity," Campbell cautions that his model "is probably valid over the range of the data presented, 15—60 mph (24–97 km/h)." Pl. Opp. to Mot. for Sum. Jdgmt. (Dkt. No. 107) Ex. J at 2; Ridgeway Dep. in Def. 56.1 Stat. (Dkt. No. 105) Ex. S at 150. At the end of the paper, Campbell states that, "[s]ince most of the data used here was at 30 mph (48 km/h), accuracy should also be expected to decrease as one approaches the limits of 15–60 mph (24–97 km/h) range given." *Id.* at 10. Both Ridgeway and Lacek propose to testify that Alves' vehicle was traveling at significantly less

---

4. Defendants assert that Ridgeway and Lacek are not qualified to provide the evidence that they proffer. However, it appears that their training and experience are minimally adequate for them to provide evidence on accident reconstruction, the velocity of Alves' vehicle at the time it crashed, and its barrier equivalent velocity. Neither Ridgeway nor Lacek are qualified to opine on air bag design, however.

than 15 miles per hour when it crashed. Therefore, Campbell's paper itself indicates that his model cannot be used to develop reliable estimates of her speed.

On December 1, 2000, Federal Rule of Evidence 702 was amended to codify the Supreme Court's decision in *Daubert, supra* and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Reporter's memorandum to the Advisory Committee addressed the purposes of the amendment. That memorandum states, among other things, that " '[t]he amendment makes clear that reliable *application* of a method is every bit as important as whether the method is itself reliable.' " Stephen A. Saltzburg et al., 3 *Federal Rules of Evidence Manual* § 702.02[10] (8th Ed.2002). As Professor Salzburg has written, "[m]any *experts* after *Daubert* have fallen into the trap of relying on a proper methodology, but failing to connect it to the facts of the case." *Id.* at 702–30–1 (citing *Bogosian v. Mercedes–Benz of North America, Inc.,* 104 F.3d 472 (1st Cir.1997); *Sorensen v. Shaklee,* 31 F.3d 638 (8th Cir.1994); *Chikovsky v. Ortho Pharmaceutical, Corp.,* 832 F.Supp. 341 (S.D.Fla.1993)). In the instant case, Alves' experts have identified a methodology that appears to be reliable in certain circumstances, but which the sole article describing it indicates is not reliable at the speed at which she and her experts estimate her Mazda was traveling. Thus, Federal Rule of Evidence 702(2) and (3) operate to exclude the experts' evidence because the witnesses have not applied a methodology that may be reliable in certain circumstances "reliably to the facts of the case." Fed.R.Evid. 702(3); *Bogosian,* 104 F.3d at 479.

■■ Moreover, even if Ridgeway and Lacek had applied their methods reliably, their testimony would not likely be sufficient to allow the plaintiff to survive a fully briefed motion for summary judgment.[5] To prove her negligent design claim, Alves would be required to show that the defendants designed a product, that this design imposed an "unreasonable risk" on the plaintiff, and that the defective design caused the plaintiff's injury. *Smith v. Ariens Co.,* 375 Mass. 620, 624, 377 N.E.2d 954 (1978). To decide that a design imposed an unreasonable risk, the jury must consider "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product from an alternative design." *Back v. Wickes Corp.,* 375 Mass. 633, 642, 378 N.E.2d 964 (1978). Lacek and Ridgeway offer no evidence on the mechanical feasibility of any alternative design, the costs of such a design, or the consequences of such a design. As a result, Alves' negligent design claim would evidently fail even if their evidence were admissible.

■ A jury could not infer liability for negligent design based on *res ipsa loquitur.* To prevail on a theory of *res ipsa loquitur,* the plaintiff must show that "the mere occurrence of the accident shows negligence as a cause." *Enrich v. Windmere Corp.,* 416 Mass. 83, 88, 616 N.E.2d 1081 (1993). Here, the jury would need to be able to infer that air bags deploy at a speed below 14 m.p.h. only as the result of a negligent design or a manu-

**5.** Defendants' motion for summary judgment is based almost exclusively on the assumption that Alves' experts' evidence has been excluded. Defendants address the impact of that evidence only briefly and Alves does not address it at all. If Alves' experts' evidence was not being excluded, the court would order briefing of a motion for summary judgment that focuses on the legal sufficiency of their opinions.

facturing defect. A jury could not in this case reasonably make that inference. While Mazda's brochure states that the air bag will deploy in a frontal collision above 14 m.p.h., it does not say they will not, or should not, deploy at a lower speed. Moreover, an air bag could malfunction because of prior damage to the vehicle or, possibly, poor maintenance, in which case the defendants would not be liable. The first possibility, at least, is a real one here. Ridgeway stated at his deposition that he could see from the photographs that Alves' vehicle had been damaged in a previous accident. *See* Ridgeway Dep. in Pl. Opp. to Mot. for Sum. Jdgmt. (Dkt. No. 107) Ex. A at 52. As a result, even if the air bag malfunctioned, that alone would be insufficient to prove that it was negligently designed or manufactured.

 The plaintiff's breach of warranty claim also appears to be insufficiently supported even with Ridgeway and Lacek's testimony. To prevail on a breach of warranty claim, the plaintiff must show "(1) that the defendant manufactured or sold the product; (2) that a defect or unreasonably dangerous condition existed at the time the product left the defendant's hands so that it was not reasonably suitable for the ordinary uses for which goods of that kind were sold; (3) that at the time of his injury, the plaintiff was using the product in a manner that the defendant intended or that could reasonably have been foreseen; and (4) that the defect or unreasonably defective condition ... was a legal cause of the plaintiff's injury." *Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App.Ct. 317, 337, 698 N.E.2d 28 (1998).

Here, the plaintiff's experts propose to testify that Alves' air bag was "defective," but all they really have been able to conclude was that if they are correct about the speed of Alves' crash, the air bag should not have deployed. Alves has not present-

ed any evidence of the manner in which the air bag was allegedly defective. Neither expert, for example, opined as to whether the purported defect was a result of improper design rather than negligent manufacture. Moreover, Ridgeway's opinion that Alves' Mazda was damaged in an earlier accident undercuts the necessary claim that it was in an unreasonably dangerous condition when it left the defendants' hands.

 Even if Ridgeway and Lacek were allowed to provide evidence, the plaintiff's failure to warn claim would fail. Essentially, Alves alleges that her Mazda's air bag posed a special risk to short women and that the defendants should have warned her of that risk. However, federal automobile safety regulations address the warnings that automobile manufacturers may and may not include. Alves' precise claim that state law requires an additional warning concerning risks of air bags to short people has been correctly held to be preempted by federal law. *Fisher v. Ford Motor Co.*, 224 F.3d 570, 574 (6th Cir. 2000); *see also Stewart v. General Motors*, 102 Fed.Appx. 961, 964 (6th Cir.2004).

Moreover, even if the failure to warn claim was not preempted, the reports of Alves' experts do not opine that the air bag posed a special risk to short women. Rather, Alves does not appear to have any evidence to establish that claim.

For all of these reasons, the Alves' need for Ridgeway and Lacek's testimony is minimal at best.

At the August 14, 2006 hearing Alves' attorney urged the court to recognize the "David and Goliath" relationship of the parties and, for this reason, to deny defendants' motion to exclude Alves' experts' evidence. However, as the First Circuit stated in addressing this consideration in *Gagnon*, 437 F.3d at 197:

Certainly, were the concept [of harmlessness] to be a balancing of harms or burdens of the parties, without consideration of fault or concerns about present and future court administration, an individual plaintiff in a product liability case would likely always prevail against a corporate defendant, no matter how poor his counsel's representation or how case management might be affected.

*Id.*

Therefore, the relative means of the parties cannot be the end of the Rule 37(c)(1) inquiry. Rather, the court must consider and balance the relevant factors that have been analyzed in this Memorandum. *Id.* Those factors overwhelmingly favor exclusion of Alves' expert evidence, even assuming, without finding, that their evidence would permit any of her claims to survive defendants' motion for summary judgment.

This conclusion is not qualified by the fact that without her experts' evidence, a woman who was blinded in an accident after her Mazda's air bag deployed will lose her case. The court recognizes her poignant plight and her apparently limited means. Where it has had legitimate discretion, these considerations have contributed to the court deciding procedural issues in her favor by, for example, allowing the belated addition of Mazda Motor Corporation as a party and repeatedly extending the deadline for her experts' disclosures despite the lack of timely requests to do so.

However, at this point: there was no legitimate justification for the failure to meet the March 1, 2005 deadline; defendants have been harmed; the court's ability to control its crowded docket has been injured; and Alves' experts' opinions are inadmissible and, in any event, apparently insufficient to sustain any of her claims.

■ It is not clear whether a more diligent lawyer than Felici could have developed a case that would have survived defendants' motion for summary judgment, but this is immaterial. As the Supreme Court has written in a different context, plaintiff " 'voluntarily chose [her] attorney as [her] representative in [this] action, and [she] cannot now avoid the consequences of the acts or omissions of this freely selected agent.' " *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer,* 101 U.S. 320, 326, 101 U.S. 320, 25 L.Ed. 955 (1962)); *see also Davila–Alvarez v. Escuela de Medicina Universidad Central del Caribe,* 257 F.3d 58, 66 (1st Cir.2001); *KPS & Associates, Inc. v. Designs by FMC, Inc.,* 318 F.3d 1, 16 (1st Cir.2003) ("in this Circuit we have consistently turned a deaf ear to the plea that the sins of the attorney should not be visited upon the client").

As described earlier, the First Circuit has repeatedly explained that exclusion of expert evidence is the required sanction in the ordinary case. *Gagnon,* 437 F.3d at 191; *Primus* 389 F.3d at 235; *Klonoski,* 156 F.3d at 269. It is the appropriate sanction in this case regardless of whether Ridgeway or Lacek have proffered evidence that is admissible or material.

As explained earlier, on the present record, the defendants' motion for summary judgment appears to be meritorious even if Ridgeway and Lacek's testimony were considered. As expert evidence is essential to Alves's case, the defendants are clearly entitled to prevail now that their evidence is being excluded. *See Hochen,* 290 F.3d at 451; *White,* 1999 WL 819566, at *3; *Britt,* 699 So.2d at 181; *Wood,* 760 A.2d at 318; *Caudill v. Toyota Motor Corp.,* 2005 WL 3149311, at *2–*3. Once again, as explained earlier, Alves' failure to warn claim is preempted. *See Fisher,* 224

F.3d at 574. Moreover, even when viewed in the light most favorable to Alves, she has provided no evidence on several essential prongs of her defective design and manufacturing claims. Therefore, defendants are entitled to summary judgment.[6]

## IV. ORDER

In view of the foregoing, it is hereby ORDERED that defendants' motion to preclude evidence under Rule 37(c)(1) and for summary judgment (Docket No. 103) is ALLOWED.

---

6. Because defendants are entitled to summary judgment in any event, the court is not deciding their spoliation claim.