WOODCOCK, District Judge,
concurring in part and dissenting in part.
I concur fully with the majority’s thoughtful resolution of the removal issue. I disagree, however, with the majority’s conclusion that the district judge abused his discretion by precluding Esposito’s expert witness because I believe that, in reaching this conclusion, the majority has applied a higher dismissal standard to a Rule 37(c) discretionary sanction. I respectfully dissent.
I. Two Standards: Dismissal and Rule 37(c)(1) Witness Preclusion
A. The Dismissal Standard
Dismissal with prejudice is different from other sanctions. Benitez-Garcia, 468 F.3d at 4 (describing dismissal as “the harshest sanction”); Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 67 (1st Cir.1999) (describing dismissal with prejudice for failure to prosecute as “drastic”); Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir.1990) (describing dismissal as “the most severe sanction”). A district court is allowed to employ dismissal as a sanction “only when a plaintiffs misconduct is extreme.” Young, 330 F.3d at 81. Dismissal as a sanction is “reserved for cases of ‘extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstances.’ ” Benitez-Garcia, 468 F.3d at 4 (quoting Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987)). Concerns of fairness underlie this heightened standard, since the law favors “disposition on the merits,” Ortiz-Anglada, 183 F.3d at 66-67, and the non-compliant party should be given “notice and an opportunity to be heard.” Benitez-Garcia, 468 F.3d at 5. Further, “where the case is close, courts should prefer less severe sanctions that preserve the possibility of disposition on the merits.” Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 48 (1st Cir.2003).
B. The Rule 37(c) Sanction Standard
The imposition of a lesser sanction under Rule-37(c), such as witness preclusion, is not held to the high dismissal standard and does not require egregious and repetitive misconduct. Instead, Rule 37(c)(1) “requires the near automatic exclusion of Rule 26 information that is not timely disclosed.” Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 20-21 (1st Cir.2001). Though the automatic nature of the preclusion sanction is softened by the Macaulay factors, witness preclusion is not held to the rigorous standards of dismissal. See Macaulay, 321 F.3d at 51 (listing as factors the history of the litigation, the proponent’s need for the challenged evidence, the justification (if any) for the late disclosure, the opponent’s ability to overcome its adverse effects (such as surprise and prejudice), and court docket considerations).
C. Leading to Dismissal
This case touches on which standard applies when the sanction of witness preclusion ultimately results in dismissal. My view is that the Rule 37(c)(1) standard applies, not the dismissal standard or something in between.
II. Rule 37(c)(1)

A. Automatic Exclusion as the Sanction in the Ordinary Case

Rule 37(c)(1) provides:
*82 If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.
Fed.R.Civ.P. 37(c)(1). Esposito violated his obligation to disclose his expert testimony first and on time as required both by Rule 26(a)(2)(C) and by the court order in this case.[3] In precluding Esposito’s expert, the district court imposed the “automatic sanction” of exclusion. Fed.R.Civ.P. 26 advisory committee’s note, 1993 amendments (stating that “[pjaragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56.”); Santiago-Diaz, 456 F.3d at 276 (stating that “[t]he baseline rule is that ‘the required sanction in the ordinary case is mandatory preclusion’ ” (quoting Lohnes v. Level 3 Commc’ns, Inc., 272 F.3d 49, 60 (1st Cir.2001))). Here, by excluding the expert’s testimony, the district court imposed the “mandatory preclusion” sanction that the Rule, the advisory committee, and this circuit contemplate will be imposed in the “ordinary case.” Santiago-Diaz, 456 F.3d at 276. I find it difficult to conclude that the district judge abused his discretion in doing so.
B. Exceptions to the Automatic Sanction of Exclusion
Rule 37(c) allows for exceptions to the automatic sanction of exclusion when the party’s failure to comply is “substantially justified” or “harmless.” Fed.R.Civ.P. 37(c)(1). Here, neither exception applies.
1. Substantial Justifícation
There was no justification at all, much less a substantial one, for Esposito’s failure to timely disclose his expert. Esposito’s attorney ultimately conceded that the failure to comply with express terms of both Rule 26(a) and the court scheduling order was no one’s fault but his own.
2. Harmless
Examples of “harmless” late disclosure under Rule 37(c)(1) in the advisory committee notes suggest that the “harmless” component has limited application, and the failure to make a timely and complete expert disclosure does not fit.[4] The district court identified two types of harm caused by Esposito’s failure to disclose: (1) Harm specific to the defendants in this case, and (2) harm to future defendants and efficient court administration. Standing alone, each would justify the exclusion *83 sanction; taken together, the two factors demonstrate that late disclosure here was not harmless and the district judge’s decision not an abuse of discretion.
The district court’s first concern was the impact on the defendants. The magistrate judge (whose opinion the district court adopted) observed that if Esposito were permitted to make a belated expert disclosure, defendants would be forced to have their expert review Esposito’s expert’s report and make new disclosures in response. Further, the magistrate judge noted that the defendants had filed a motion for summary judgment based on the absence of a plaintiffs expert, and, if the late disclosure were allowed, they would have to file a new summary judgment motion or withdraw the one already filed.
Implicit in these concerns is the effect of Esposito’s non-disclosure on the sequential disclosure process mandated by the scheduling order and the resulting unfairness to the defendants. By Esposito’s neglect, the party with the burden of proof successfully shifted the burden of disclosure. This is what the district judge was referring to when he wrote that, if noncompliance with scheduling orders resulted in mere fines or costs, “[pjlaintiffs might seek to avoid initial expert disclosure in order to gain unfair advantage in litigation.”
The district court’s second concern has several angles. First, the district judge was troubled that if Esposito’s failure were excused, future plaintiffs, emboldened by the lenient treatment of Esposito, might make a cold-blooded judgment that the advantage of receiving the defense expert’s opinions first exceeds the disadvantage of paying court-ordered fines and costs. The district judge worried that to some the fines or sanctions might be “a price worth paying.”
The district court expressed a related institutional concern that if parties perceive that noncompliance or inattention to deadlines can be ignored, overlooked without significant consequence, or purchased for a price, the court’s ability to efficiently manage its docket would be compromised. This is not trivial. The federal rules and local practice are rife with time hurdles, the violation of which can lead to the imposition of the exclusion sanction. This has been a conscious, choice by the Rules Committee. As this circuit has recognized, experience has taught that the parties cannot be left to police themselves, and courts routinely impose and enforce deadlines to bring complex federal cases to fruition. The federal bar is acutely aware of the certainty of exclusion, and the lawyers proceed accordingly. A deadline without a sanction severe enough to cause compliance is not a deadline at all; it is a suggestion. See Macaulay, 321 F.3d at 51 (stating that “trial judges must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets”).
In this context, the district court expressed concern that the failure to exclude in this case would lead others to seize upon the benevolence of the district court to gain unwarranted strategic advantages, as happened here, by forcing the defense to disclose its experts first. This type of consideration is, as this circuit has repeatedly recognized, a legitimate concern for the district court. Young, 330 F.3d at 83 (observing that deterrence of others from similar misconduct is a proper purpose for a district judge fashioning a sanction); Macaulay, 321 F.3d at 51 (discussing the district judge’s right to consider the impact of the sanction on the court’s docket); Tower Ventures, Inc., 296 F.3d at 46 (stating that “the court’s efforts at stewardship are undermined where, as here, a party cavalierly flouts the court’s scheduling orders”).
*84 C. First Circuit Authority
There is a decade of First Circuit authority that supports the exclusion of an expert if a party fails to make a timely disclosure. See Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 18 (1st Cir.2008); Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 26-27 (1st Cir.2006); Santiago-Diaz, 456 F.3d at 276; Gagnon, 437 F.3d at 191; Primus, 389 F.3d at 234-36; Young, 330 F.3d at 81-83; Macaulay, 321 F.3d at 50-53; Tower Ventures, 296 F.3d at 46; Lohnes, 272 F.3d at 59-61; Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia, 248 F.3d 29, 33-36 (1st Cir.2001); Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir.1998). District courts in this circuit have routinely followed suit. See Alves v. Mazda Motor of America, Inc., 448 F.Supp.2d 285, 293-97 (D.Mass.2006); Peterson v. Scotia Prince Cruises, Ltd., 222 F.R.D. 216, 217-18 (D.Me.2004). I concede that each case stands on its own facts and each can be distinguished in sometimes subtle and sometimes significant ways, but up to now the consistent message from this circuit has been that the trial bar must comply with expert designation orders or face the likelihood that the expert witness will be excluded.
D. The Decision to Exclude
The district judge’s decision to exclude a late-designated expert would ordinarily pass as an unremarkable and expected exercise of judicial discretion. The district judge issued a thoughtful written opinion, discussed the sanctioning alternatives, and elected, for clearly-stated and permissible reasons, to impose the sanction of exclusion.
III. The Sanction’s Result
What makes this case different than a garden variety imposition of the automatic sanction of exclusion? It must be the harshness of the result: The district court entered summary judgment against a person who sustained a serious physical injury while using the defendants’ product.
A. A New Dismissal Standard
The majority seems to impose a new two-part analysis before a district court may order a sanction that later leads to dismissal: First, the district court must consider the traditional Rule 37(c) Macaulay factors; second, the district court must compare the violation at issue with conduct that had previously justified dismissal.[5] The majority thus grafts the dismissal standard onto the traditional 37(c) rubric. In effect, the majority reads a bifurcated sanction standard into Rule 37(c): For sanctions not leading to dismissal, the Rule 37(c) discretionary standard as elaborated by Macaulay applies; for Rule 37(c) sanctions leading to dismissal, the higher dismissal standard applies.
B. Rule 37(c) Sanction Resulting in Dismissal
There are good reasons not to adopt a rule that the higher dismissal standard should apply when a district court imposes a lesser sanction that can over time lead to dismissal. The most convincing is that the dispositive impact is not always obvious *85 when the sanction is imposed.[6] In countless cases, seemingly lesser sanctions turn out to be the functional equivalent to dismissal under a different guise. Exclusion of a document, restriction of the scope of a deposition, striking a late-disclosed lay witness’s testimony — all may seem non-dis-positive at the time. However, when the dispositive motion is filed or as the trial proceeds, the sanction may prove to have been decisive. The district judge who at the time of imposition thinks the sanction is relatively lenient may have instead condemned the violator to the time and expense of a losing trial. Even the imposition of a monetary sanction for a party without resources can be the featherweight that tips the scales and forces an unfavorable settlement. The point is that the imposition of a sanction must be evaluated based on the standards applicable to the sanction itself, not to its range of potential consequences. Otherwise, in addition to evaluating and punishing the conduct that precipitated the sanction, the district judge will be required to assess its overall impact on the parties and the case itself, an assessment the district judge is unlikely to be able to accurately make at the time. If the district court’s prediction that the sanction will be less than dispositive turns out to be inaccurate, it may well lead to a retrospective appellate determination that the district court should have applied a higher dismissal standard and that it abused its discretion, not for imposing the sanction, but for failing to accurately predict its effect.
I acknowledge that a policy argument can be made that there should be a different standard for Rule 37(c) cases, such as this one, where “all parties acknowledged that the sanction carried the force of a dismissal.” But the language of Rule 37(c) does not suggest a separate standard for the narrow band of cases where the district judge is reasonably certain the sanction will end up causing a dismissal, and to date the First Circuit has not carved out such an exception.
To be clear, I have no quarrel with the proposition that the district court should take into consideration the likely consequence of a sanction, at least when the judge concludes that the consequence is obvious. The Macaulay factors include “the proponent’s need for the challenged evidence,” 321 F.3d at 51, and the likelihood that the proponent’s case will fail should be considered under this factor. But here the district judge did just that. In any event, I do not agree that the likelihood of dismissal should transform a judge’s discretionary imposition of the usual sanction into an abuse of that discretion or, put another way, that under Macaulay, the prospect of dismissal trumps the other factors and elevates the usual sanction into *86 a dismissal analysis requiring egregious conduct.
IV. Consequences
I worry that the majority’s opinion will leave district judges at sea as to when they are authorized to impose a sanction if it leads or could lead to dismissal. Ironically, under the majority’s formulation, the sanction of exclusion will end up being applied only when it does not really matter and not imposed when it does.
It would seem the obverse should be the case: If the witness is critical, the proponent has a compelling incentive to comply with the deadlines precisely because the exclusion will mean more. In the long run, I believe the imposition of dismissal standards on sanctions leading to dismissal will prove unfortunate. Young, 330 F.3d at 83 (“Sanctions are often intended to do more than calibrate the scales between a particular plaintiff and a particular defendant. One principle purpose is to deter others from similar misconduct.”).
I am also worried that the majority’s decision will be read to extend to thousands of district court sanction decisions that up to now have been viewed as the normal course of business. The failure to timely respond to a motion, the failure to adequately respond to a statement of material fact in a motion for summary judgment, the failure to list an exhibit or witness before trial, and the myriad of other routine miscues often lead to exclusion or waiver and later can be causally traced to an adverse judgment. The list goes on and on and is the grist for the district coui’t mill. In short, district courts roufinely impose sanctions, great and small, that lead directly and indirectly to one party winning and the other losing.
I am concerned that the majority’s opinion will be cited to force the trial court to back away from imposing what up to now has been the expected sanction and that the lackadaisical will draw heart, the compliant will suffer, and the ability of the district court to manage its docket will be compromised. To date, district judges have imposed the Rule 37(c)(1) sanction of exclusion with confidence that the appellate court will affirm their exercise of discretion, but from now on, a district court will be wary of excluding evidence that could lead later to judgment against the offending party, unless the violator “engaged in the same level of foot-dragging as was present in Tower Ventures, nor sloughed off a warning from the district court like the plaintiff in Young.” The normal Rule 37(c)(1) sanction of preclusion for failure to designate an expert will become extraordinary, applicable only where the violator has demonstrated a pattern of persistent violation. This result runs contrary to the Rule’s mandate; exclusion becomes the exception, and a lesser sanction the rule.[7]
Finally, the majority states that “a less severe remedy could have easily achieved the same aims as the preclusion of the expert.” Preclusion aside, the other Rule 37(c)(1) sanctions are payment of reasonable expenses, informing the jury of the party’s failure, any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), or “other appropriate sanctions.” Fed.R.Civ.P. 37(c)(1)(A)- *87 (C). The orders listed in Rule 37(b)(2)(A)(i)-(vi) are nearly all the equivalent of expert preclusion or more severe. See Fed.R.Civ.P. 37(b)(2)(A)(i)-(vi) (setting forth a range of sanctions, including directing that the matters embraced in the discovery order be established for purposes of the action, prohibiting the disobedient party from supporting or opposing the designated claims or defenses, striking the pleadings in whole or in part, dismissing the action or proceeding in whole or in part, or rendering a default judgment).
The majority implicitly approves a “lesser sanction, such as the imposition of fines or costs” and concludes that “[i]n the absence of a greater conviction that parties will indeed attempt to purchase their way out of discovery compliance as a result of our holding in this case, we are not persuaded that the sanction here was justified.” At least as it concerns the danger of compliance being purchased at a price, the correct monetary sanction is an exceedingly tricky question.[8] What quantum of “greater conviction” will be necessary before a trial judge can properly conclude that the parties have attempted “to purchase their way out of discovery compliance”? How does a trial court go about establishing this factor?[9] And, what amount, if any, will effectively deter parties from attempting to purchase their way out of discovery compliance?
It is difficult to know on this record, which is exactly the point. As this circuit has often recognized, the district court, with its more intimate familiarity with the parties, the attorneys, the travel of the case, the court docket, and other factors, is in a far better position to make this judgment. Here, the district judge considered the imposition of a monetary sanction and concluded no amount would work because a fine or costs would “send the message that noncompliance or inattention to deadlines can be purchased for a price.” Instead, he made the difficult, case specific judgment to exclude, and I conclude that, in doing so, the district judge acted within the scope of his authorized discretion.

. Rule 26(a)(2)(C) states that "[a] party must make these disclosures at the times and in the sequence that the court orders.” Fed. R.Civ.P. 26(a)(2)(C). Esposito was required under the terms of the April 16, 2007 Court Order to make his expert disclosures by June 21, 2007 and to make his disclosures before the defendants made theirs. Esposito violated both Rule and the Order.

. The Advisory Committee observed:
Limiting the automatic sanction to violations "without substantial justification,” coupled with the exception for violations that are "harmless” is needed to avoid unduly harsh penalties in a variety of situations, e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.
Fed.R.Civ.P. 37 advisory committee’s note, 1993 amendments.

. Ironically, the majority introduces this standard in reversing the district judge, who applied the same two-step analysis that the majority now proposes. The district judge considered all the Rule 37(c) factors and went on to evaluate the case under the dismissal standard, expressly discussing Young and Tower Ventures. At the same time, I agree with the majority that if the higher dismissal standard applies, it would be difficult to affirm the district court, since there is no evidence in this record of Young or Tower Ventures levels of misconduct.

. A sanctioning court is often not in a good position to predict such consequences. Here, although both parties and the district judge correctly predicted that preclusion was tantamount to dismissal, it is not inconceivable that Esposito could have asserted the malfunction theory to avoid summary judgment. See Walker v. General Elec. Co., 968 F.2d 116, 120 (1st Cir.1992); Canning v. Broan-Nutone, LLC, No. 05-15, 2007 WL 1112355, at *16-17 (D.Me. March 30, 2007) (recognizing the applicability of res ipsa loquitur in the product liability context). The point is not that Esposito erred in failing to assert the malfunction theory as a defense (it was likely inapplicable), but that, when he imposed the sanction, the district judge may have incorrectly assumed exclusion would automatically lead to dismissal. If the higher dismissal standard is applied to a Rule 37(c) sanction, the court will avoid imposing a sanction that could lead to dismissal unless the circumstances are egregious. If the court has guessed wrong and the exclusion would not have led to dismissal, the offending party will have avoided exclusion under a more forgiving standard than Rule 37(c) contemplates.

. As a practical matter, the appellate court may never know the extent to which this decision causes district judges to avoid the automatic sanction of exclusion. Faced with appellate authority stating that, absent a pattern of egregious conduct, witness exclusion will constitute an abuse of discretion if it leads to dismissal, district courts are likely to seek safer ground and impose lesser sanctions. Neither party is likely to appeal such a ruling; the offender will not, and the compliant party will know that the lesser sanction fits squarely within the trial court's broad range of sanctioning discretion.

. At the same time, I concede that more traditional monetary sanction evaluations are not nearly as difficult to calculate, and district courts are fully capable of assessing attorney’s fees and costs for the rippling impact of late expert disclosure.

. As Rule 37(c) provides exclusion as the automatic sanction, it would seem that the burden to convince the trial court not to impose the sanction of exclusion — and that offending parties are not attempting to purchase their way out of discovery compliance — should rest with the offenders, not with the compliant party or the trial court.